Seaboard Surety Company, a Foreign Corporation, Plaintiff-Appellee, v. Glenayre Estates, Inc., a Corporation, Carol Kuhn, et al., Defendants-Appellants.

Gen. No. 52,812.

First District, Fourth Division.

September 10, 1969.

Fred Weiszmann, of Northbrook, for appellants.

Menk, Johnson, Bishop & Brooks, of Chicago (John Cadwalader Menk, of counsel), for appellee.

MR. PRESIDING JUSTICE DRUCKER delivered the opinion of the court.

This action was brought by plaintiff, a surety company, to recover from its indemnitors, defendants, sums paid

to the Highway Commissioner of Maine Township of Cook County, to obtain release of a performance bond upon which plaintiff was surety. The trial court found in favor of the plaintiff and entered a judgment in the amount of $6,140, plus $2,815.70 for costs and attorneys' fees.

Defendants raise three points in their appeal: (1) that they were not proven to have inadequately performed on their contract with the Maine Township Highway Commissioner for the construction of certain streets; (2) that the amount of damages is excessive because it includes the cost of a superior type of surface than that required in the contract with the Highway Commissioner; and (3) that pursuant to the "Sureties" statute of Illinois, Ill Rev Stats 1961, c 132, § 1, plaintiff, instead of paying the amount claimed and suing the defendants, should have sought a release from its obligations.

On February 15, 1957, defendant Glenayre Estates, Inc., entered into an agreement with the Maine Township Highway Commissioner to construct certain streets in the Eugenia Subdivision in accordance with the "Standard Specifications for Road and Bridge Construction of the State of Illinois." The streets were to be "a minimum of 20 feet of paved area with blacktop A–3 surface on a seven-inch stone Base," and were to be subject to the approval of the County Superintendent of Highways. The agreement required a performance and completion bond which was obtained from plaintiff.

In order to obtain the bond, defendant Glenayre Estates, Inc., entered into one agreement, and the individual defendants entered into another agreement, to indemnify plaintiff against losses suffered by it as a consequence of the performance and completion bond. Glenayre then hired Troyh-McNeil Paving Company to build a street known as Stacey Court. According to appellants' Statement of Facts "[i]n Spring of 1958, defendant Glenayre caused Stacey Court to be constructed under the supervi-

sion of the Highway Commissioner to I-11 standards rather than the lesser A-3 standards set forth by the Surety Bond." Appellants' brief also states that "with the approval of the Highway Commissioner a wider street of 26 feet with a better surface of I-11 asphalt was in fact constructed."

About two years after the completion of Stacey Court, Troyh-McNeil did some repairs on Stacey Court consisting of replacing some small patches of base and resurfacing those areas. Thereafter, in the spring of 1960, the then Commissioner Elmer Dean inspected Stacey Court and found it in a state of disrepair; he stated that if the holes were repaired that the street would be accepted. Defendants did not make the repairs and shortly thereafter Commissioner Dean died. Dean had ordered tests of the road from Ki-Mat Soil Testing. Ki-Mat made seven boring tests and found a damp clay base and varying depths of stone and gravel; some of the borings revealed the presence of sand immediately below the surface. The stone found varied from fine gravel to coarse and crushed stone; and the heaviest stone was always found immediately above the subbase. In several borings, the heavy stone was found below the seven-inch level. Moisture and dampness in different degrees was found in six of the seven borings.

Another inspection of the base in 1964 made by sinking a pick into deteriorated locations revealed about two inches of crushed stone and several more inches of a mud clay.

During the course of 1963 and 1964 several meetings were held between representatives of defendants, of the plaintiff, and of the Highway Commissioner. At one meeting defendants offered to patch the holes in the road and resurface it with A-3, but the Commissioner refused to accept this and insisted on an I-11 surface. At a later meeting the Commissioner brought in a bid from the Skokie Valley Asphalt Company to repair the road, but

343

the defendants thought that the bid was too high and offered to find a lower bidder by the next meeting. At the next meeting there was no lower bidder so Skokie Valley was awarded a contract to make repairs on Stacey Court.

Skokie Valley found it necessary to replace the entire base which was done with existing broken asphalt and poz-o-pac; and the road was resurfaced with I-11. The total cost to Skokie Valley for the work was $6,289.02 for which the Highway Commissioner was charged only the bid price of $6,140. A reasonable charge for the work done by Skokie Valley was $7,054.55.

■■ It is undisputed in the instant case that Stacey Court needed major repairs in the summer of 1964 when Skokie Valley was hired to rebase and resurface that road. The question raised on these facts is whether the deterioration was caused by faulty initial installation of the road or by some other force. Defendants contend that if they followed the plans and specifications properly, then they cannot be held liable for the cost of repairing any subsequent deterioration. This is correct. When a surety company settles a claim before the validity of that claim has been adjudicated, then the burden is upon the surety in an action against its indemnitor to prove a valid and legal liability. See United States Fidelity & Guaranty Co. v. Dickason, 277 Ill 77, 115 NE 173; National Slovak Society of the United States of America for the use of American Surety Co. of New York v. Matlocha, 307 Ill App 41, 29 NE2d 946. Thus the issue in the instant case is whether the initial construction of Stacey Court was properly accomplished according to the plans and specifications; and the burden was on the plaintiff surety company to prove that the road was not properly constructed.

The only direct evidence on the question of what materials were put into the base is the testimony of defense witnesses McNeil and Hill. Earl McNeil is one-half owner

344

of the paving contractor that originally installed Stacey Court and was at the job site twice a day while the road was being built. He testified that a seven-inch stone base was put in according to the plans and specifications, and he testified further that he measured the depth of the base. Defendant Virgil Hill testified that he was on Stacey Court every day that the road was being built because he was in charge of the construction of houses along the street. He testified that he was not in charge of the road building but that he observed a seven-inch stone base being put in on Stacey Court.

Plaintiff was unable to offer any direct evidence that seven inches of stone was not put into the Stacey Court base; rather plaintiff introduced evidence of the soil tests made in 1961 and 1964 and had experts testify as to their conclusions from materials found in the Stacey Court base.

Plaintiff's expert witness William Mathieu, who made some soil tests in 1961, testified that the conditions he found would not have existed if the road had had a hard clay subbase and a compacted stone base. He stated that it was fair to conclude that the subbase and base he found contained the materials that were actually placed in the road. He further testified that the sand he found in the base is not the type of sand that is used in laying a gravel base, that it must have been put in with the base, and that the presence of the sand would prevent the proper compaction of the base. He testified that the wet condition he found was in part caused by the failure of the top seal to hold moisture out, but he also stated that improper drainage could cause the problem. He testified that the moisture was a contributing cause of the deterioration of the road.

Another of plaintiff's experts, Elmer F. Bronke, testified that the condition of the road in 1964 indicated improper compaction of both the subbase and the base. He stated that the improper compaction of the base allowed the subbase to pump up through the stone and created a

345

condition where any normal traffic would cause the pavement to disintegrate. The primary cause of the failure was the improper compaction of the base. On cross-examination he conceded that there were other potential reasons for a failure, among them being traffic in heavy equipment over an incomplete base and improper drainage. On redirect, however, he stated that if there were a properly compacted subbase and base, then the conditions he found on Stacey Court would not have existed.

Defendants' experts offer a different explanation for the deterioration of Stacey Court that is not inconsistent with that of plaintiff's experts. Defendants' experts testified that the clay subbase could be pumped up through the stone base creating the condition discovered in 1961 and 1964 if there is water on the subbase and if there is heavy traffic over the base. The existence of those two conditions will cause the base to sink into and mix with the subbase. Then when a flexible surface (such as an A–3 or an I–11) is laid over the base the undulations of that surface will draw the subbase up through the base because of the vacuum created under the surface.

Defendants argue that the theory of their experts is supported by the facts that there was rain during the construction of the road, that there was a serious drainage problem on Stacey Court which was no fault of theirs, and that there was heavy traffic over the exposed base for several months before the surface was laid. Defendants did not, however, offer any refutation of plaintiff's evidence that there was sand in the base materials and that the sand would prevent proper compaction of the base.

■■ It is a well established principle that a reviewing court will not substitute its judgment on a factual question for that of a trial court unless that judgment is manifestly against the weight of the evidence. Narowetz Heating & Ventilating Co. v. Solar Sales, 86 Ill App2d 387, 392, 230 NE2d 37. The evidence adduced by plaintiff supports a finding that the base and subbase were

improperly constructed. Defendants' evidence that a damp condition coupled with heavy traffic over the base can cause deterioration is admitted by plaintiff's experts. However, they all state that the pumping up which occurred on Stacey Court would not have occurred if the base and subbase had been properly compacted. This theory is never denied by defendants; and it was incumbent upon defendants to properly compact the base and subbase. Further, there was testimony that the proper compaction of the base was prevented by the presence of sand in the base materials. Defendants were responsible for the placement of proper materials in the base of Stacey Court and must be held responsible for the sand, the existence of which they did not deny. We are, therefore, of the opinion that defendants' installation of Stacey Court did not satisfy the specifications and requirements of the County Highway Commission, and we hold that the judgment of the trial court was not against the manifest weight of the evidence.

Defendants next contend that the damage award is in an improper amount. Defendants argue that the $6,140 was paid for the replacement of the base and for the placing of an I–11 surface; but they point to the specifications which require only an A–3 surface (which is less expensive than an I–11) and contend that they should be held only for the cost of the less expensive surface. This argument is without merit, however, because defendant Victor Kuhn testified that the change in surface to I–11 was necessitated by a problem in blending an A–3 with the surface which was on the roads of the adjoining subdivision, Eugenia No. 1. Defendants admit in their brief that the change to the more expensive surface was made with the approval of the Highway Commissioner. Thus it appears that the written specifications were orally modified to require the placing of an I–11 surface on Stacey Court. Such being the case, the specifications would be satisfied and the bond released only if an I–11 surface was placed on Stacey Court, and defend-

347

ants are obligated to compensate plaintiff for the expense incurred in the placing of the required surface.

Defendants finally argue that the Illinois statute governing sureties, Ill Rev Stats 1961, c 132, § 1, required plaintiff to give notice to the Highway Commission to sue defendants. However, the statute leaves the employment of this procedure at the option of the surety and allows its use only when the surety "apprehends that his principal [defendants herein] is likely to become insolvent or to remove from the state, without discharging the contract." Thus the statute is unavailing to defendants because it does not require the surety to follow the procedure and because there were no grounds for apprehension that defendants were likely to become insolvent or to remove from the state.

Reviewing the entire record, we believe that the trial court was correct in its judgment that defendants were liable to plaintiff in the amount of $6,140, plus assessed costs and attorneys' fees. The judgment is affirmed.

Affirmed.

ENGLISH and STAMOS, JJ., concur.