PAUL E. McGANN, Defendant-Appellant, *v.* JAMES E. MURRY, JR., Plaintiff-Appellee.

Third District   No. 78-432

Opinion filed August 23, 1979.

Melvin H. Hoffman, of Hoffman & Mueller, of Ottawa, for appellant.

James L. Brusatte, of Peter F. Ferracuti & Associates, of Ottawa, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal from the Circuit Court of La Salle County which after bench trial awarded the plaintiff, James E. Murry, Jr., a judgment in the sum of $2,546.24 for the failure of the defendant, Paul E. McGann, to properly maintain a leasehold.

In January 1970, the defendant leased from the plaintiff certain commercial property, being a drive-in restaurant operation located in the city of Ottawa, Illinois. The restaurant building was surrounded by front and rear blacktop parking lots. The front lot was laid or blacktopped in

1955; the rear lot was laid in 1966. The lease entered into by the parties contained several provisions which are pertinent to this appeal and which are as follows:

Article V(5), section F, provided that the lessee covenanted and agreed on his part:

"To *maintain* and keep said premises, at their own expense, both the interior and *exterior*, in good condition and repair as the same shall be upon taking possession thereof, natural wear, injury by fire or other unavoidable accidents excepted." (Emphasis supplied.)

Article III states that the lessee:

"* * * agrees to deliver to the [Lessor] physical possession of the demised premises upon the termination of the term thereof or any extension thereof, in good condition, wear and tear, damage by fire or damage from any other cause not directly attributable to the negligence of the Lessee excepted."

Article VI(6), section B, of the lease provides:

"Lessors agree to re-surface the parking lot in the Spring of 1970 with a sealcoat and the Lessee shall *maintain* said parking lot in good condition thereafter and during the term hereof." (Emphasis supplied.)

The plaintiff abided by his obligation under article VI(6), section B, of the lease in that he resurfaced the parking lot. The record discloses that no work or maintenance was performed by the defendant-lessee or under his direction during his entire tenancy on the rear parking lot. The defendant during the course of the trial explicitly testified that neither he nor anyone under his direction had done any work on the rear or back lot during his tenancy. Similar testimony was received from employees of the defendant.

The defendant in his brief states that the rear parking lot was in good condition at the commencement of his tenancy. It was admitted by the defendant during the trial that for a period of five years he permitted a business known as Ryg Farm Equipment to park various makes and models of trucks on the rear lot. This area was also used for customer and employee parking.

The defendant's tenancy was terminated in January of 1978. On February 7, 1978, the plaintiff filed suit against the defendant in which he sought damages for the defendant's alleged failure to repair and maintain the leasehold as was required by the terms of the lease. In the complaint the defendant made general allegations of failure to maintain and repair. During the trial of the cause in addition to testimony concerning defendant's failure to repair or maintain the parking area, an effort was made

to prove that the defendant left the premises in a dirty condition, failed to repair an air conditioner, steps, fence, a floor, lavatory and plumbing fixtures and equipment. The trial court ruled in favor of the plaintiff only as to the rear or back parking lot and awarded damages in the sum of $2,546.24 for defendant's failure to maintain this area. This appeal is from this award only, and hence this court is not asked to nor will it consider the court's ruling as to other allegations of leasehold violations by the plaintiff.

It should be noted that Robert Newell, referred to by both parties as an expert witness, gave crucial testimony as to the condition of the back or rear parking lot near the time when defendant's tenancy was terminated. Newell was an engineer for Wetherby Construction Company of Ottawa, Illinois. During his 26 years as an employee of Wetherby he had made hundreds of examinations and estimates for the sealing and patching of asphalt parking lots. It was Newell's testimony that on November 21, 1977, at the plaintiff's request he examined both the front and rear parking lots at the drive-in and made a written report and estimate regarding his observations. This written report was admitted into evidence. The written estimate stated that "the rear lot needs patching and sealing." The estimated cost was $2,546.24. The testimony of Newell during the trial was to the same effect with the further observation that proper maintenance requires a lot to be sealed and patched every two or three years.

The trial court at the time of announcing its decision submitted a somewhat lengthy and well-considered memorandum opinion in which was set forth the court's findings as to the various claims made by the plaintiff. We deem it advisable to set forth the portion of that opinion which relates to the rear parking lot:

"This brings us to the question of the maintenance of the back lot blacktop. The evidence is uncontradicted that the back lot was in excellent condition at the time that the Defendant took possession in 1970. Mr. Robert Newell, an engineer, testified for the Plaintiff and testified that the back lot needed sealing and patching. He further testified when called by the Defendant, that the back lot was not bad except for some needed patching near the entrance. However, on cross examination, he did admit that the back lot *could have* needed sealing as well as patching. He also testified that proper maintenance of blacktop requires resealing every two to three years and the evidence is that after the Plaintiff resealed this back lot in 1971, the Defendant failed to perform any maintenance on it. It is the Court's opinion that the lease put an obligation of maintaining this lot on the Defendant that he did not perform and

the evidence is that the cost of patching and resealing this lot is $2,546.24.

It is therefore in the Court's opinion that the remaining Plaintiff, James E. Murry, Jr., is entitled to a judgment against the Defendant in the amount of $2,546.24 and costs of suit."

The issues presented to this court for review are whether the trial court's opinion was against the manifest weight of the evidence and whether the trial court properly applied the applicable law to the evidence presented.

Reviewing courts have repeatedly stated that the trial court's findings on questions of fact when sitting without a jury will not be disturbed on appeal unless manifestly against the weight of the evidence. *County of Will v. Woodhill Enterprises, Inc.* (1971), 4 Ill. App. 3d 68, 274 N.E.2d 476; *Seaboard Surety Co. v. Glenayre Estates, Inc.* (1969), 114 Ill. App. 2d 341, 252 N.E.2d 712; *In re Gleeson's Will* (1954), 1 Ill. App. 2d 409, 117 N.E.2d 792.

No useful purpose would be served in entering into a detailed and exhaustive examination of the evidence adduced in this case before the trial court. The factual recitation in this opinion based on the testimony of various witnesses clearly eliminates any possibility that the trial court's decision was against the manifest weight of the evidence. We deem pertinent and persuasive the remarks of the trial judge in his memorandum opinion which were as follows:

"* * * the court in determining the credit to be given to the witnesses has been influenced by the various witnesses' ability and opportunity to observe; his memory; his manner while testifying; his interest, bias or prejudice and the reasonableness of his testimony considered in light of all the evidence in the case."

■■ The defendant admitted that he did not do or cause to be done any work on the lot in question during his tenancy. He further admitted that he used the lot and that the same was in good condition when his tenancy commenced. The admission of the defendant coupled with the testimony of other witnesses clearly refutes his contention that the trial court's opinion or findings of fact were against the manifest weight of the evidence.

■■■ Directing our attention to the question as to whether the trial court properly applied the law to the evidence presented, it is the decision of this court that the answer to this question is in the affirmative. The trial court properly applied the applicable law. Maintenance has been defined as the upkeep or preservation of property. (*Bogan v. Postlewait* (1970), 130 Ill. App. 2d 729, 265 N.E.2d 195.) The law in our State is that when parties to a lease have expressly entered into covenants as to repairs and

maintenance of leased property these covenants supersede any implied or common law covenants and become the measure of liability and duty for the respective parties. *Hardy v. Montgomery Ward & Co.* (1971), 131 Ill. App. 2d 1038, 267 N.E.2d 748.

■ The defendant entered into a covenant to maintain the premises. There is expert testimony in the record that a parking lot should be patched and sealed every two or three years as a matter of routine maintenance. There is also testimony that the defendant occupied and used the premises from 1970 until 1978 and never during that period of time applied any sealer to the rear parking lot. The defendant failed to maintain the rear parking lot as required of him by the covenant contained in the lease. It can only be concluded that the trial court properly applied the applicable law.

The defendant makes several contentions with which we cannot agree. He asserts that a general covenant to maintain merely limits him to preserve the status quo and does not involve the making of substantial improvements. This assertion is untenable since the defendant did not maintain the status quo. The plaintiff fulfilled his covenant to resurface the lot in question and then in the ensuing years the defendant did not personally or cause anyone else to maintain the lot. By his inaction the defendant permitted the lot to deteriorate from the condition it was in after the plaintiff applied sealer to it. Nor can we agree with the defendant that a covenant to repair and maintain on the part of a tenant is satisfied if the premises are kept in substantial repair because in the instant case no maintenance or repair was performed. The defendant argues that an express covenant to maintain or repair should not be enlarged by construction. We quarrel not with this statement; however, in the instant case the defendant's duty was not enlarged. It should be noted that the trial court ruled the defendant had no duty to repair the front parking lot since to repair it would in effect entail a replacement of the front lot which was in poor condition when rented by the defendant. As to the rear lot, the trial court ruled that the defendant had a duty to provide routine maintenance and that he had failed to fulfill this duty. Lastly, the defendant contends that where parties dispute the meaning to be attached to the provisions of a lease drawn by the landlord, the court should construe such provisions in favor of the tenant. In support of this contention the defendant cites the case of *South Parkway Bldg. Corp. v. South Center Department Store* (1958), 19 Ill. App. 2d 14, 153 N.E.2d 291, and 24 Ill. L. & Prac. *Landlord & Tenant* §44 (1956). We differ with the defendant as to the interpretation of the cited material. A "dispute" as to the meaning of a provision in a lease does not result in a construction favorable to the tenant. The defendant is citing material pertaining to

language contained in a lease which is ambiguous. The lease in the instant case contains no ambiguity as to any provision, nor was the question of ambiguous provisions presented to the trial court.

For the reasons set forth the judgment of the Circuit Court of La Salle County is affirmed.

Affirmed.

BARRY and STENGEL, JJ., concur.