**Ethel B. Kaufman, Plaintiff-Appellee, v. Shoe Corporation of America, an Ohio Corporation, Defendant-Appellant.**

**Gen. No. 10,268.**

Third District.
February 18, 1960.
Released for publication March 7, 1960.

H. R. Tingley, of Columbus, Ohio, and John Alan Appleman, of Urbana, for defendant-appellant.

Keller and Keller, of Champaign (Charles I. Keller, of counsel) for plaintiff-appellee.

JUDGE ROETH delivered the opinion of the court.

This is a declaratory judgment action to declare the rights of the parties under a written lease. There is no factual dispute and the questions involved are presented by the pleadings.

In October, 1949, the plaintiff and defendant entered into the lease here in question, by which plaintiff leased certain premises in the City of Champaign, for use as a store, to the defendant for a period of 25 years commencing on July 1, 1952, and ending on June 30, 1977. The specified rental for the term was $500,000 payable at the rate of $20,000 per year in equal monthly payments. At the time this lease was executed the building was heated with steam furnished by and purchased from Illinois Power Company. The steam was brought to the building by Illinois Power Company and then circulated through the building by means of radiators and other fixtures. Cost of the steam was paid for by the tenant. In 1958 the Illinois Power Company obtained authority from the Illinois Commerce Commission to discontinue the steam heat service in Champaign. The Illinois Power Company then notified the plaintiff and defendant that as of May 1, 1959, it would discontinue furnishing steam for heating purposes. Such action by the power company made necessary the installation in the building of some type of heating equipment if the building were to be continued to be used as a store building. The trial court held that the duty to install the heating equipment devolved upon the defendant, except that if a chimney or flue was required, these items constituted

structural changes, the cost of which should be borne by the plaintiff. Upon oral argument of this case in this court, it was disclosed by counsel that because of the exigencies of the situation, the heating equipment had been installed under an agreement that liability of the plaintiff or defendant for the cost thereof would abide the outcome of this case. The basic question is whether the tenant is obligated to install this heating equipment under the terms of its lease. Both counsel agree that the question here presented is without precedent in Illinois.

The provisions of the lease which it is contended bear upon a solution of this problem are as follows:

"The Lessee further agrees that neither the demised premises nor any building at any time situated thereon, or any part thereof, shall be used for any unlawful purpose, or for any purpose in violation of any lawful regulation, and that during the said term the demised premises, and every part thereof, and the buildings and improvements thereon, shall be kept by the Lessee in good repair, and in a clean, wholesome, insurable and rentable condition, and that all health and police regulations in all respects, and at all times, shall be fully complied with by the Lessee, and that all sidewalks and areas in front and in the rear of said premises shall be kept by the Lessee safe, secure and conformable to all lawful requirements, provided, however, that the Lessee shall not be required to make any structural repairs and the Lessee agrees to save and keep harmless the Lessor at all times against any loss, damage, costs or expenses which may be occasioned by any failure of the Lessee to comply with any of the provisions of this lease, or which may result from any accident or injury or damage to person or property, and happening or done in, upon or about the demised premises, or resulting from any act or thing done or omitted to be done upon said premises, or any building

434

at any time situated thereon, or which may be due to any use or occupancy which may be made thereof."

██ It is first contended that the obligation on the part of the defendant to install the heating equipment is covered by the provision above, by which the lessee covenants to keep the premises in good repair. The word repair in this clause has its ordinary meaning as given in Funk & Wagnall's New Standard Dictionary, to-wit: restoration after decay, waste, injury or partial destruction; supply of loss; reparation. It does not include alterations or additions. Hacken v. Isenberg, 288 Ill. 589; 124 N. E. 306. The word "repair" involves the idea of something pre-existing and presupposes something in existence to be repaired, or the existence of the thing to be repaired. 76 C. J. S., p. 1170, (Repair.) Applying these definitions to the words "repairs" and "structural repairs" as contained in the foregoing clause, it would initially appear that under a strict construction, the installation of new heating equipment could not be classified as either a "repair" or "structural repair." If a thing cannot be classified as a "repair" in the ordinary sense it would follow that it could not be a "repair" in the specific sense of being designated as "structural."

██ Certain fundamental principles aid us in determining the question before us. An express covenant to repair will not be enlarged by construction. Hollywood Bldg. Corp. v. Greenview Amusement Co., 315 Ill. App. 658, 43 N.E.2d 566. Where the parties to a lease of real property have expressly covenanted as to repairs, the express covenant takes the place of any implied covenant and becomes the measure of liability of the respective parties. A general covenant of the tenant to repair, or to keep the premises in repair, merely binds him to make the ordinary repairs reasonably required to keep the premises in proper condition; it does not require him to make repairs involv-

ing structural changes. In order to shift on the tenant a burden which would naturally fall on the landlord, the warrant for the change should be plainly discoverable in the lease. 51 C. J. S., Landlord and Tenant, Sec. 368.

██ Where a tenant covenants merely to repair and the alterations or additions to the premises are of a structural or substantial nature and are made necessary by extraordinary or unforeseen future events not within the contemplation of the parties at the time the lease was executed, the landlord is ordinarily held liable for such alterations or additions. In Ingalls v. Roger Smith Hotels Corporation, 143 Conn. 1, 118 Atl.2d 463, the lessor leased premises for hotel purposes for a 14 year term. The lease provided that the lessee covenanted to keep the interior and exterior of the demised premises in adequate, proper and satisfactory repair at the expense of the lessee, provided the lessee shall be under no obligation to make structural alterations or repairs. Some 4 years after the execution of the lease the General Assembly authorized the state fire marshal to establish a fire safety code. Pursuant to this authority the fire marshal prepared a code and subsequently notified the hotel that some 17 items of work were necessary if the hotel was to comply with the code. The largest single item was the installation of an automatic sprinkler system throughout the hotel. The question arose in this case as to who should be required to pay the cost of the work. The court held that the work did not fall within the tenant's covenant to repair and without passing upon the obligation of the landlord under the provision above noted as to structural alterations or repairs, held the landlord liable noting "the court erred in imposing upon the defendant (tenant) the duty of paying for any of these items, since *the lessee is not required to absorb*

436

*the cost of creating something new."* (emphasis supplied.)

In Belmont Hotel, Inc. v. New Jersey Title Guarantee & Trust Co., 132 N. J. L. 403, 40 Atl.2d 778, the lease was for 10 years, and provided that the tenant was to make all repairs and deliver up the premises at the expiration of the term in good condition, reasonable wear and tear and damage by the elements only excepted.

The heating plant burned fuel oil. Subsequent to the execution of the lease and during the war period, because of a scarcity of fuel oil, federal authorities ordered conversion to coal as fuel which required the installation of new heating equipment. In making the conversion it became necessary to make certain changes, to install storage bins, coal chutes and an automatic stoker and it was necessary to employ an engineer and contractor. The landlord refused to make the changes, and the tenant had them made and sued the landlord to recover the cost.

The court held that the landlord was liable for the cost of the changes. It said:

"The learned trial court concluded that the conversion of the heating system from fuel oil to coal burning did not constitute a repair or maintenance within the meaning of the lease, which was the tenant's obligation, but was a structural change, the obligation for which was the landlord's. We concur with that view."

In Herald Square Realty Co. v. Saks & Co., 215 N. Y. 427, 109 N. E. 545, an owner of premises, pursuant to an agreement, erected a building for a prospective tenant, for use as a department store. The plans, which indicated a slight projection of display windows beyond the building line into street lines, were approved by the commissioner of buildings. At the time the plans were approved and for many years prior thereto it was the policy and common practice

437

of the authorities to permit and sanction such slight projections of buildings beyond building lines. After the erection of the building a 20 year lease was entered into. The lease provided that the tenant would keep "the demised premises and every portion thereof, inside and outside, . . . in good order, condition and repair." Some 8 years after the execution of the lease there was a change of municipal policy and the parties to the lease were directed to remove the encroachment. The question involved was whether the landlord or tenant should bear the cost of this removal. In holding that the landlord should bear the cost of removal, despite the provisions of the lease aforesaid, the court observed:

"Here the tenant is sought to be charged with the expense of making an important and permanent structural change in the building occupied by him. *This burden is one that usually falls upon the owner,* and if it is to be shifted to the tenant the warrant for the change should be plainly discoverable in the lease. We can find in the lease no indication that this was the intention of the parties, . . . The language of this lease, construed in the light of contemporaneous regulations, usages, and customs, seems to require the conclusion that it was not the purpose of the parties to subject the tenant to an expense caused wholly by extraordinary and unforeseen building alterations made necessary by a subsequent and radical change in the policy of the municipal government, and we are brought to this conclusion despite the forceful argument of counsel for the plaintiff, in which he contends that the expense of complying with the order of the borough president, directing the removal of the show windows, comes within the very letter of the lease. We think that this extraordinary expense was not in the contemplation of the parties when this lease was made." (emphasis supplied.)

438

 Attention is called to an annotation in 33 A. L. R. 530 and supplements thereto in which similar cases may be found holding that comparable additions or changes do not fall within a tenant's covenant to repair. From the foregoing we conclude that the covenant of the defendant, in the case at bar, to keep the premises in repair, does not obligate it to pay the cost of the heating equipment.

It is contended that the provision requiring the defendant to keep the premises in a rentable condition is broad enough to obligate the defendant to install the heating equipment. But this provision must be considered in connection with the language that precedes it. We are of the opinion that the proper construction is that the tenant is required to make such repairs as will keep the premises in a rentable condition, that is, the ordinary repairs reasonably required to keep the premises in proper condition and prevent waste and decay.

 Plaintiff seizes upon the language above, to-wit: "and the Lessee agrees to save and keep harmless the Lessor at all times against any loss, damage, costs or expenses . . . resulting from any act or thing done or omitted to be done upon said premises, or any building at any time situated thereon," and contends that the heating facilities are an expense occasioned or resulting from a thing done upon said premises. This contention takes the language out of its true context. When the whole clause is considered it is apparent that what is intended is an indemnification of the lessor against loss caused by default of the lessee or by reason of any accident occurring upon the premises, whether through active negligence or careless omission.

We are therefore of the opinion that the trial court erred in construing the lease in question to require the defendant tenant to furnish the heating equipment.

The order should have required the plaintiff to install the heating equipment and any chimney, flue or other structure necessary to properly operate the same.

Accordingly the judgment of the Circuit Court of Champaign County is reversed and the cause is remanded with directions to enter a judgment in accordance with this opinion.

Reversed and remanded.

REYNOLDS, P. J. and CARROLL, J., concur.