Otto Koenigshofer, et al., Plaintiffs-Counter-Defendants, Appellees, v. George B. Shumate, et al., Defendants-Counter-Plaintiffs, Appellants.

Gen. No. 50,282.

First District, Third Division.

February 10, 1966.

Concannon, Dillon, Snook & Morton, of Chicago (William R. Dillon and Thomas E. Dillon, of counsel), for appellants.

Favil David Berns and Samuel B. Bass, of Chicago, for appellees.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

This is an appeal from an order confirming a judgment by confession and ordering that defendants take nothing by a counterclaim. Plaintiffs, Otto Koenigshofer and his wife Anna, had leased to defendants, George B. Shumate and his wife Mary, a building for use as a rooming house. The judgment was for rent due for a three-month period under the lease. The issue presented is whether the lessors' failure to correct substantial violations of city housing regulations constitutes a constructive eviction so as to end the liability of the lessees who took the property with actual knowledge of its condition and later vacated it when the city sought compliance.

The lease was made in 1958. Late in 1961 the Department of Buildings gave notice that there were substantial

violations of provisions of the Municipal Code (enacted prior to 1958) and ordered compliance with the following requirements:

"Provide two direct means of exit for occupants of first, second and third floors. . . .

"Provide proper one-hour stairwell enclosure with self-closing Class 'B' fire doors. . . .

"Provide one-hour corridor enclosures with 1¾" solid core doors and 1¾" solid rebated frames. . . .

"Provide one-hour fire separation between all units on first, second and third floors. . . ."

Otto Koenigshofer, who resided in California, requested that George Shumate appear before a Compliance Board on his behalf. Later Koenigshofer returned to Chicago briefly and found that compliance would cost an estimated $18,000. When compliance did not take place, both of them were named as defendants in a suit for penalties in the amount of $800. Koenigshofer was nonsuited for lack of service. When the case came up for trial, the court indicated it would reduce the fine if Shumate vacated the building. The case was then continued with no order being entered. Defendants did vacate after notifying the plaintiffs that they considered the lease terminated on the ground of constructive eviction, that they were serving notice of termination of tenancy upon the occupants of the building, and that they were withholding one month's rent as security for damages. When the case was again called for trial, Shumate was found guilty and fined only $100. Plaintiffs reentered the premises, complied with the requirements at a cost of $17,000, and after two months vacancy in which the repairs were made, they were able to relet the premises. The judgment in question was for the rent for those three months.

The lease contains clauses making the lessees generally responsible for repairs. Defendants argue that repairs of

this nature are so substantial and unforeseen as to be "structural" in character and not within the scope of those clauses. However, they say, the lessors are responsible and their failure to make these vital improvements amounts to a constructive eviction.

■ ■ It is well established that where a lease contains a clause making the lessee generally responsible for repairs, the expense of repairing subsequently discovered deficiencies falls upon the lessee, unless the deficiency is so substantial and unforeseen as to be termed "structural." See Kaufman v. Shoe Corp. of America, 24 Ill App2d 431, 436, 164 NE2d 617. It has been thought unfair to require a lessee to provide substantial permanent improvements necessary to his enjoyment of the lease which he could not have foreseen when the term began. Thus, the classification of repairs as "structural" depends not so much on the physical characteristics of the deficiency as on its foreseeability, from which the intentions and agreement of the parties may be inferred.

■ The collapse of a building through a grave defect concealed in its structure, for example, would ordinarily be unforeseeable. The responsibility for such a repair would rest on the lessor. But there is no law against letting a tumbledown house. 1 Tiffany on Landlord and Tenant 557 (1910). If the lessee knew of the defects when executing the lease, it can and should be presumed that he accepted the property as it stood at the time of leasing. Under such circumstances, as between lessor and lessee neither would be liable.

■ In the instant case, the defendants inspected the premises floor by floor and examined the corridors. Defendants admitted that the conditions on which constructive eviction is predicated preexisted the lease. Inspection must have disclosed the lack of fire enclosures in the stairwell and corridors and the inadequate number of direct exits. Defendants are charged with knowledge of the ordinance, which was in effect before execution of

477

the lease. The commencement of legal proceedings by the city was unforeseeable only in the sense that one might have calculated that illegal conditions on any single piece of property in the city were likely to remain undiscovered.

The defects having existed and being known to the lessees when the building was let, their later discovery by the city in no way affects the lessees' obligations under the lease. Kiernan v. Bush Temple of Music Co., 229 Ill 494, 82 NE 410; Eskin v. Freedman, 53 Ill App2d 144, 203 NE2d 24. In the Kiernan case the city had obtained the closing of a theater for failure to correct substantial violations of the building ordinance. The lessee sought an injunction against collection of rent on the ground that the lessors had breached an implied covenant of quiet enjoyment by their failure to correct the violations. The court upheld the denial of that relief and said (pp 505, 506):

> "The lessee, equally with the lessor, must be presumed to have known of the provisions of the building ordinance in force when the lease was executed . . . [The illegal conditions] were all matters that could be readily seen . . . . No covenant on the part of the lessor can be implied that the lessee should be permitted to use the demised premises in violation of the building ordinance. . . . [T]he complainant had used . . . movable scenery in a building so constructed that the use of movable scenery therein was prohibited . . . and gave the city authorities the right to close the theater. We do not think that the disturbance of the lessee's enjoyment of the demised premises thus occasioned can be held a breach of the lessor's implied covenant. . . ."

Similarly, in Eskin v. Freedman, supra, the city had obtained a mandatory injunction requiring the lessors of a building used as a rooming house to reduce the number

of rental units from 49 to 12. The lessees charged that on account of the violations, the lessors had breached an implied warranty that the premises were fit for the use for which they were demised. The court held that the lessees had no cause of action in the absence of an allegation that "the lessors knew of the existence of the violations . . . and failed to disclose such knowledge to the [lessees] who were ignorant of such violations." (P 154.)

Several New York cases are cited by defendants. In Herald Square Realty Co. v. Saks & Co., 215 NY 427, 109 NE 545, 546 (1915) the lessors were held responsible for substantial improvements which were unforeseeable insofar as they became necessary because governmental regulations or policies were changed after the execution of the lease. Contrary cases cited are Younger v. Campbell, 163 NY Supp 609 (App Div 1917), and Sullivan v. New York United Realty Co., 293 NY Supp 957, 960 (App Div 1937), where lessors were held responsible for substantial changes required by enforcement of city regulations which existed when the leases were made. These cases depart from the rationale expressed by the Court of Appeals in the Herald Square Realty case, supra, and reflect an unacceptably narrow viewpoint as to the contingencies which parties to a lease should foresee.

██ It is our conclusion that the lessors were not responsible under the lease for the making of the repairs in question and that there was no constructive eviction. The dismissal of the counterclaim was proper and the judgment is affirmed.

Judgment affirmed.

SULLIVAN, P. J. and DEMPSEY, J., concur.