JENNIE HARDY, Plaintiff, *v.* MONTGOMERY WARD & Co., INC. *et al.,* Defendant, Third Party Plaintiff-Appellant — (L. M. & O. MOTOR COMPANY, Third Party Defendant-Appellee.)

(No. 70-6;

Fifth District—March 9, 1971.

G. MORAN, J., dissenting.

Murray & Stephens, of Centralia, (George C. Lackey, of counsel,) for appellant.

Craig & Craig, of Mt. Vernon, (Glen E. Moore, of counsel,) for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

This is an appeal by defendant, Montgomery Ward & Co., Inc., hereafter referred to as tenant, from an order of the circuit court dismissing its third party complaint against L. M. & O. Motor Company, hereafter referred to as landlord. The case comes to this court on its pleadings.

The plaintiff in this case was a customer in the tenant's retail store. She was struck on the head and injured by plaster which fell from the ceiling of the store premises. The premises were leased by the tenant for retail store purposes. Plaintiff filed a complaint for damages against the tenant alleging herself to be a business invitee and her injury by the falling plaster. She charged the tenant with negligence in failing to maintain the premises in a reasonably safe condition, in failing to make a reasonable and adequate inspection of the ceiling, in failing to inspect the ceiling after having knowledge that plaster had previously fallen from the

same general area, in failing to take reasonable precautions by repairing the ceiling, and in failing to warn the plaintiff she might or could be struck by falling plaster.

The tenant filed a third party complaint against the landlord. It alleged that the landlord is obligated under the terms of the lease to make all repairs and replacements (other than those specifically assigned by the lease to the tenant) necessary to put and maintain the premises in a safe condition, that the ceiling repairs were not to be made by the tenant, and that the "collapse of the ceiling" was not the result of the tenant's negligence. Further that under the terms of the lease the landlord was obligated to indemnify and hold the tenant harmless from all claims by reason of the negligent performance by the landlord of its obligation under the lease, and that the injuries for which plaintiff seeks recovery were a result of the negligence of the landlord. The third party complaint prayed judgment against the landlord for all amounts which the tenant may be required to expend because of the suit.

The landlord filed its motion to dismiss the third party complaint upon the grounds that no facts were alleged to show the landlord has breached its covenant to make repairs, and that all pleadings in the case show that the plaintiff's injury resulted from the tenant's failure to make interior non-structural repairs required by the lease to be made by the tenant. By an order dated July 3, 1969, the third party complaint was dismissed. The tenant did not file an amended complaint to allege that the defect in the premises extended to any component other than plaster. On September 9, 1969, the landlord filed its motion to make the order of dismissal a final order. By order entered on October 2, 1969, the order dismissing the third party complaint was made final, and pursuant to Supreme Court Rule 304, it incorporated a finding that there was no reason to delay enforcement or appeal.

The tenant appeals seeking reversal of the order declaring the order of dismissal a final order because it is not an appealable order, or, alternatively, that the order should be reversed. The issue presented for review is the legal sufficiency of the third party complaint.

A copy of the lease in question is attached to and incorporated in the third party complaint. Paragraph 35 of the lease contains a reciprocal agreement by the parties to indemnify and hold each other harmless from damages resulting from negligent performance or failure to perform any obligations incurred under the lease. Paragraph 39 of the lease pertains to repairs. It provides:

"The Tenant shall make all repairs and replacements made necessary as a result of its negligence and all interior non-structural repairs and replacements (including repairs and replacements to the heating system,

air conditioning system, electrical system, plumbing, elevator, sprinkler system, aluminum marquee and plate glass) necessary to keep and maintain the premises in good order and state of repair; provided, however, that the Tenant shall not be obligated to make any repairs or replacements made necessary as a result of damage caused by fire, the elements, or any cause covered by the extended coverage insurance required to be carried by the Landlord, irrespective of any negligence on the part of the Tenant causing or tending to cause same. The Landlord shall promptly make all repairs and replacements (other than those specifically required to be made by the Tenants) necessary to put and maintain the premises, including all improvements now or hereafter thereon, and all appurtenances thereto (including adjoining sidewalks and curbs), in a safe and tenantable condition, and in good order and repair."

■■ The theory of the third party complaint is that the plaintiff's claim is occasioned by a condition of the premises not resulting from the negligence of the tenant but from a defect in the premises which was not of an interior non-structural nature and thus was the result of the landlord's failure to make repairs and replacements which were necessary to put and maintain the premises in a safe and tenantable condition and in good order or repair, and it is therefore the duty of the landlord to indemnify the tenant against the claim. The tenant acknowledges that generally a tenant or occupant of leased premises, and not the owner, is responsible for injuries from a defective condition of the demised premises. It contends that the mutual indemnity provision of the lease, together with the covenant to repair, is an attempt by the parties to apportion this responsibiliy between the parties so that the tenant would bear ultimate responsibility for damages and injuries caused by defects which it was required to repair.

It is the position of the landlord that the third party complaint includes the lease attached, and when the complaint is thus considered it shows on its face that the tenant, not the landlord, was required to repair the plaster which fell and accordingly the landlord is not in breach of its duty to repair so as to require it to indemnify the tenant.

■■ Where the parties to a lease of real property have expressly covenanted as to repairs, the express covenant takes the place of any implied covenant and becomes the measure of liability of the respective parties. A general covenant of the tenant to repair, or to keep the premises in repair, merely binds him to make the ordinary repairs reasonably required to keep the premises in proper condition; it does not require him to make repairs involving structural changes. In order to shift on the tenant a burden which would naturally fall on the landlord, the warrant

for the change should be plainly discoverable in the lease. (51 C.J.S., Landlord and Tenant, Section 368.) The rules for construction of the terms of a lease to ascertain the true intention of the parties have been so often expressed and cited as to need no further recital here.

■■ Responsibilities for repairs to the plaster are not expressly assigned to either party to the lease. Paragraph 39 of the lease allots responsibility for repairs to the leased premises. It obligates the tenant to "make all repairs and replacements made necessary as a result of its negligence and all interior non-structural repairs and replacements * * * necessary to keep and maintain the premises in good order and state of repair * * *." The same paragraph obligates the landlord to "* * * * make all repairs and replacements (other than those specifically required to be made by the tenant) necessary to put and maintain the premises, including all improvements now or hereafter thereon and all appurtenances thereof * * * in a safe and tenantable condition and good order and repair." The issue then becomes whether the plaster and any repairs that may have been required thereto are "structural" and the obligation of the landlord, or "interior non-structural" and the obligation of the tenant. We believe, with the landlord, that plaster is of an interior non-structural nature and therefore the obligation under the lease for the repair thereof is that of the tenant.

That the plaster in question was "interior" is not disputed since it fell upon the plaintiff while she was inside the building. There is nothing in the plaintiff's complaint or the tenant's third party complaint to indicate that the parties used the word "plaster" for any but its general accepted meaning. Webster's Third New International Dictionary (1968) gives the pertinent definition of plaster as, "A material that is applied in a plastic state (as by troweling) and hardens upon drying, that is used esp. for coating interior walls, ceilings and partitions and that is usually made by mixing sand and water with gypsum plaster, quicklime or hydrate lime to which hair or fiber may be added to act as a binder." The same reference gives the pertinent definition of structural as, "The details of a house consisting of floors, joists, rafters, walls and partition studs, supporting columns, foundations." As thus defined, and as generally understood, plaster is simply not a structural component of a ceiling or wall, it is a superficial covering material used for finishing and decorating. The plaster was not a part of structure, it fell from the structure. Since it was interior non-structural it was the duty of the tenant to make necessary repairs and liabiliy for injury resulting from the failure to repair is that of the tenant and may not be shifted to the landlord.

Our attention has been called to two Illinois cases which deal with the question of what are structural repairs, *Koenigshofer, v. Shumate,* 68 Ill. App.2d 474, 216 N.E.2d 195; and *Kaufman v. Shoe Corporation of America,*

24 Ill.App.2d 431, 164 N.E.2d 617. They stand generally for the proposition that where a lease contains a clause making the lessee generally responsible for repairs, the expense of repairs of subsequently discovered deficiencies falls upon the lessee, unless the deficiency is so substantial and unforeseen as to be termed "structural." In the *Kaufman* case it was decided that the lease provision obligating the lessee to make repairs would not extend to the installation of a heating system for the premises when the previously available steam heating service was discontinued by a public utility. The heating system was deemed to have been extra-ordinary and of a structural nature and not covered by the tenant's covenant to repair. In the *Koenig-shofer* case the lease was made when there were substantial violations of the Municipal Building Code and the tenant had made a thorough inspection of the premises before entering into the lease. The lease contained clauses making the lessee generally responsible for repairs. The tenant argued that the repairs required to make the building comply with the Municipal Code were so substantial and unforeseen as to be "structural" and not within the scope of the covenant for repairs. The court found, however, that since the tenant had made a thorough inspection and knew the condition of the premises and was charged with knowledge of the ordinance which was in effect before the execution of the lease the responsibility for making the structure comply with the ordinance was that of the tenant. We perceive nothing in those two cases that would be inconsistent with the result we reach; to the contrary, they require it.

■■ The tenant strenuously argues that since the third party complaint alleges in the language of the lease that the plaintiff's injuries were caused by a defect in the premises which was the duty of the landlord to repair, and the motion to dismiss admits as true all well pleaded facts, the complaint states a cause of action and the case must stand for trial. The tenant further argues that whether any repairs were in fact necessary to "put and maintain the premises in a safe and tenantable condition and in good order and repair," and whether such repairs are the responsibility of the tenant or the landlord, the physical characteristics of the deficiency, the nature and cause of the collapse of the plaster, the time the defect arose and the proper construction of any ambiguity in the lease are matters of evidence which cannot be determined from the pleadings. We think, however, that the bare allegations of the complaint do not suffice for a determination of the question. The lease is attached to and incorporated in the complaint and thus becomes a part of it. The conclusive allegations of the complaint are contrary to the plain meaning of the lease which is attached to the complaint as an exhibit. An exhibit attached to a complaint controls and a motion to dismiss does not admit allegations in conflict with facts disclosed by an exhibit. (*Sangamon County Fair & Agricultural*

*Association v. Stanard,* 9 Ill.2d 267, 137 N.E.2d 487, 493.) "Where the language of a pleading is at variance with the recitals of a document attached to or made a part of such pleadings, the recitals in the documents prevail (citing cases). The rule just stated applies when the instrument sued on is the basis for recovery * * *" (*Jones v. McCollen* 85 Ill. App.2d 375, 227 N.E.2d 788, 792.) To the same effect is *Bunker Hill Country Club v. McElhatton,* 282 Ill.App. 221, 236." Evidence cannot make plaster a structural component of the building. There are no allegations in the complaint or third party complaint showing the defect to be structural in nature. The tenant was in possession of the premises and therefore had superior knowledge of the origin of the defect in question. If it were structural in nature presumably they would have such knowledge and have made the appropriate allegation in their third party complaint.

The judgment of the trial court dismissing the tenant's third party complaint should be affirmed.

Judgment affirmed.

BARR, J., concurs.

GEORGE J. MORAN, J., dissenting:

I realize that plaster is interior and also that normally the repair of plaster would be an interior repair which would have been the obligation of the tenant to perform. However, if the tenant claimed that the condition of the plaster on the ceiling was because of the landlord's failure to maintain the interior structure properly, it would take evidence to settle this dispute.

In the present case, Jennie Hardy sued Montgomery Ward claiming that huge chunks of plaster fell upon her causing her injuries. Montgomery Ward in turn sued L. M. & O. Motor Company, claiming that the ceiling collapsed and that the collapse was caused by L. M. & O. Motor Company's failure to maintain the premises in a safe and tenantable condition. If we take this allegation as true, and in my opinion we must do this for the purposes of deciding L. M. & O. Motor Company's motion, we must assume that the whole ceiling fell down, including the plaster, and if the evidence showed this was true, it would seem to me that there would be an obligation on the part of the landlord to indemnify as provided in Paragraph 35 of the lease.

Then too, if the evidence showed that a structural defect caused the plaster to fall, the tenant would be entitled to recover under the indemnification clause of Pararaph 35 of the lease, even though it is stated in the lease that the tenant must make interior non-structural repairs.

On a motion to dismiss, all facts well pleaded must be taken as true and the complaint must not be dismissed unless it appears from the pleadings that in no event is there any possibility of recovery. *Miller v. Dewitt,* 37 Ill.2d 273 at 287.