EXPERT CORPORATION, f/k/a Expert Manufacturing Corporation, Plaintiff-Appellee, v. LA SALLE NATIONAL BANK, as Trustee, *et al.*, Defendants-Appellants.

First District (4th Division)   No. 85—2281

Opinion filed June 12, 1986.

Katz, Randall & Weinberg, of Chicago (Stuart D. Gordon, of counsel), for appellants.

Arvey, Hodes, Costello & Burman, of Chicago (Lawrence C. Rubin, of counsel), for appellee.

PRESIDING JUSTICE LINN delivered the opinion of the court:

Plaintiff, Expert Corporation, as lessee under a written lease dated September 8, 1969, brought this action against the defendant-lessor, La Salle National Bank as trustee, and the individual defendants who are the beneficiaries of the trust, alleging the existence of a "structural problem in the north wall" of the leased premises which required rebuilding the north wall. Plaintiff sought a declaration that the north wall required immediate structural changes, and that it was the obligation of defendants to perform the repairs; plaintiff also requested an order against defendants to correct the structural defect in the north wall. Defendants filed an answer denying any obligation under the lease or under Illinois law to repair the wall. Defendants also filed a third-party complaint against Morris Riback and Juliet Riback, contending that the Ribacks had jointly and severally guaranteed full performance by plaintiff of all conditions of the lease, and that plaintiff had defaulted in its duty to repair the damage to the north wall. The trial court found from the language of the lease that the plaintiff, as lessee, was required to repair the premises but not to rebuilt the premises or undertake structural repairs. The court also noted that defendants had admitted that extensive reconstruction was necessary to correct the problem in the north wall. Defendants appeal (87 Ill. 2d R. 304(a)) from the grant of partial summary judgment and the denial of their cross-motion for partial summary judgment, contending (1) they have no common law obligation to repair the wall and (2) the court erred in denying their cross-motion for summary judgment.

BACKGROUND

In its complaint, plaintiff alleged that the north wall of the premises was 130 feet long, 18 feet 8 inches high and 12 inches thick; the north wall is a brick, load-bearing wall which supports the roof. On or about July 1, 1983, plaintiff observed a visible outward "bowing" of the wall along its entire length, approximately 12 feet above the floor which was as much as 1¾ inches out of the vertical line of the wall. Defendants admitted this allegation, except as to the date. Plaintiff also alleged that it then advised defendants that it believed the wall

was in imminent danger of collapse and that the wall required extensive reconstruction in order to be safe; plaintiff requested defendants to immediately fix and reconstruct the north wall, but the defendants failed to fix the wall and asserted their position that the reconstruction of the wall was the responsibility of plaintiff under section 701 of the lease. Defendants admitted these allegations, except that they denied the conclusion that the wall was in imminent danger of collapse.

Paragraph 701 of the lease provides as follows:

### "MAINTENANCE OF PREMISES

Section 701. Lessee further agrees, at its expense to keep the demised premises in good repair and in a clean and wholesome condition and to at all times fully comply with all health and police regulations in force and also that it will keep the improvements at any time situated upon the demised premises and all sidewalks and areas adjacent thereto, as well as in the area thereof, safe and secure and conformable to the lawful and valid requirements of any municipality in which said demised premises may be situated and of all other public authorities, and will make, at its own expense, all additions, improvements, alterations and repairs on the demised premises and on and to the appurtenances and equipment thereof required by any lawful authorities or which may be made necessary by the act or neglect of any other person or corporation (public or private), including supporting the streets and alleys adjoining the demised premises, and will keep Lessor harmless and indemnified at all times against any loss, damage, cost or expense by reason of the failure so to do in any respect or by reason of any accident, loss or damage resulting to persons or property from any use which may be made of said premises or of any improvements at any times situated thereon or by reason of or growing out of any act or thing done or omitted to be done upon said premises or in any building at any time situated thereon; and Lessee agrees that it will save, hold and keep Lessor and the demised premises free and clear of and from any and all claims, demands, penalties, liabilities, judgments, costs and expenses, including reasonable attorneys' fees, arising out of any damage which may be sustained by adjoining property or adjoining owners or other persons or property in connection with any remodeling, altering or repairing of any building or buildings on the demised premises or the erection of any new building or buildings thereon."

OPINION

■ Despite the existence of a lease containing a clause making a lessee generally responsible for repairs, if the required alterations or additions are of a substantial or structural nature and are made necessary by extraordinary or unforeseen future events not within the contemplation of the parties at the time the lease was executed, the onus of making such alterations and additions falls on the lessor. (*Mandelke v. International House of Pancakes, Inc.* (1985), 131 Ill. App. 3d 1076, 1080, 477 N.E.2d 9.) Thus, the lessee's repair obligation does not include repairs involving structural changes. (131 Ill. App. 3d 1076, 1080, 477 N.E.2d 9.) While the parties are free to agree otherwise, the lease here does not use the term "structure." (*Cf. Justine Realty Co. v. American Can Co.* (1983), 119 Ill. App. 3d 582, 584-85, 456 N.E.2d 871.) The trial court concluded in this case that the parties were in agreement that the north wall was currently structurally unsound since it bowed along its entire length; the issue before the court was who must pay for the correction of the defect.

■ We agree with the trial court that section 701 of the lease concerning "Maintenance of Premises" does not oblige the lessee to undertake structural repairs. The lessee has a duty to "repair" the wall, but we agree that it does not have a duty to engage in extensive reconstruction necessary to correct the problem here; reconstruction, as the court found, means rebuilding and not repairing. In *Hardy v. Montgomery Ward & Co.* (1971), 131 Ill. App. 2d 1038, 267 N.E.2d 748, where responsibility for repairs to interior plaster was not expressly assigned to either party to the lease, such condition was found not to be structural since plaster is a superficial covering material used for finishing or decorating. By contrast, the wall, itself, was defective in this case, not simply the paint or plaster. In *Kaufman v. Shoe Corp. of America* (1960), 24 Ill. App. 2d 431, 164 N.E.2d 617, the lessee's obligation to make repairs under a lease was held not to extend to the installation of a heating system. In *Koenigshofer v. Shumate* (1966), 68 Ill. App. 2d 474, 21 N.E.2d 195, the tenant made a thorough inspection of the premises and knew its condition; therefore, he was charged with knowledge of the existence of an ordinance requiring repairs to the building and the repairs were not so substantial and unforeseen as to be "structural" under the circumstances of that case. In *Baxter v. Illinois Police Federation* (1978), 63 Ill. App. 3d 819, 380 N.E.2d 832, plaster falling from the ceiling of the leased premises was held not to constitute a structural repair. Under the circumstances here there was no dispute or genuine issue of fact; the repairs required to be made were "structural," and despite the general

provisions in the lease the lessors were required to make the repairs under the authorities cited above.

Affirmed.

JOHNSON and McMORROW, JJ., concur.