SANFORD SANDELMAN, as Trustee, *et al.*, Plaintiffs-Appellants, v. BUCKEYE REALTY, INC., *et al.*, Defendants-Appellees.
First District (6th Division)   No. 1—89—3347

Opinion filed June 28, 1991.—Rehearing denied August 8, 1991.

Holleb & Coff and Pope & John, both of Chicago (Howard J. Stein, Howard M. Hoffman, James W. Marks, and Michael J. Howlett, Jr., of counsel), for appellants.

Ross & Hardies, of Chicago (Jeffery M. Cross and Deborah S. Pardini, of counsel), for appellees.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiffs, Sanford and Susan Sandelman (landlord), as trustees for the Aneff and Alisan Trusts, respectively, filed a declaratory judgment action asking the court to determine whether defendants, Desco Corporation and Buckeye Realty, Inc. (tenant), were in default under the terms of a long-term commercial lease for failing to replace the roof on the demised premises. After a trial without a jury, the court held that plaintiffs were obligated to replace the roof, and that defendants were not in default and were entitled to exercise their option to extend the lease term. Plaintiffs appeal.

The relevant facts are as follows. On November 30, 1949, the trustees of the Jas. P. Marsh Employees' Profit Sharing Trust (Trust) entered into a lease with the Jas. P. Marsh Corporation (Marsh) for commercial premises located at 3501 West Howard Street, Skokie, Illinois. The lease provided for an initial rental term of 25 years, with periodic five-year extensions totaling an additional 45-year rental period. The lease is a "triple-net lease," wherein tenant is responsible for real estate taxes, maintenance and insurance expenses. The original lease provided for a market value rental rate, and renewal terms were set below market value. There is no right to the tenant to purchase upon termination of the lease. Marsh utilized the building for the manufacture of various types of gauges, thermometers and other instruments.

The Trust subsequently conveyed the property, subject to the long-term lease, to the Penn Mutual Life Insurance Company (Penn

Mutual). In 1951, a supplemental agreement of lease modifying the rental terms of the lease was entered into between Penn Mutual and Marsh.

In 1982, plaintiffs purchased the premises for $120,000 from Penn Mutual subject to the original lease and supplemental agreement, and became the landlord under the lease. The Aneff and Alisan Trusts are deedholders to the Skokie property, which is managed by Kin Properties, a real estate company that manages over 600 buildings throughout the United States and Canada for the Sandelman family. Kin specializes in buying commercial properties that are encumbered by below market leases, thereby holding down the ultimate value of the property until the time of the nonrenewal expiration or end of any lease term.

On March 17, 1988, Desco Corporation acquired the assets of Marsh, including the long-term lease on the subject premises. As such, Desco acquired possession of the premises subject to the benefits and obligations of the original lease and supplemental agreement. At the time Desco acquired the property, one year remained on the current lease term with an option to renew for six successive five-year terms. (Desco subsequently assigned the lease to Buckeye, a sister corporation with identical ownership.) Desco planned eventually to relocate Marsh's business operations and rent the premises to a third party. The lease permits the tenant to assign or sublet the building.

On November 14, 1988, the tenant advised the landlord in writing of its intention to exercise its option to extend the lease. The landlord informed the tenant that it would not extend the lease term because the tenant was in default for failing to properly maintain the building and effectuate necessary repairs. The landlord compiled a list of repairs that it required the tenant to perform, several of which concerned repair and replacement of the roof. The landlord further stated that the tenant's notice to extend the term of the lease was ineffective, as it was in default at the time it attempted to extend the lease.

The landlord filed a declaratory judgment action seeking to determine whether the tenant was in default under the terms of the lease and a separate forcible entry and detainer action. The tenant in turn sought a declaratory judgment that it was not in default and that it effectively notified the landlord of its intention to extend the lease term. The court consolidated all actions prior to trial.

At trial, several expert witnesses testified for both sides concerning the condition of the roof and whether repair was cost effective or if replacement was required. The consensus of the expert witnesses'

testimony was that the roof had a useful life span ranging between 18 and 30 years. At the time of trial, the roof was approximately 40 years old. (On appeal, replacement of the roof is not at issue.)

The trial judge found the language contained in the lease under the heading of "Condition and Upkeep of Premises," as set forth in paragraph 3 of the original lease, dispositive in the determination of whether the landlord or the tenant was obligated to replace the roof. That section provides in relevant part:

> "Tenant at its own expense during the term of this lease or any extension thereof will keep said premises and all buildings and improvements of permanent character *** in good repair, replacing all broken glass with glass of the same size and quality as that broken; and replace all damaged plumbing, electrical and other fixtures with other of equal quality, and will keep said premises in a clean and healthful condition *** and upon termination of this lease, in any way, will yield up said premises to Landlord in good condition and repair (ordinary wear excepted) ***. ***

* * *

> Landlord shall not be obligated to incur any expense for repairing any improvements on the demised premises or connected therewith during the term of this lease or any extension thereof."

The trial judge determined that the roof could no longer be repaired and required replacement. The court applied the test set forth in *Kaufman v. Shoe Corporation of America* (1960), 24 Ill. App. 2d 431, 164 N.E.2d 617, to determine which party was responsible for replacement of the roof. In *Kaufman*, the court held that where alterations are of a structural or substantial nature and are made necessary by extraordinary or unforeseen future events not within the contemplation of the parties at the time the lease was executed, the landlord is responsible for such alterations or additions. *Kaufman v. Shoe Corporation*, 24 Ill. App. 2d at 436, 164 N.E.2d at 617.

The trial judge held that replacement of the roof constituted a substantial improvement, thereby satisfying the first element of the *Kaufman* standard. However, replacement of the roof in a commercial lease that could potentially extend over a 70-year term was unquestionably a foreseeable occurrence. Upon review of the language in paragraph 3, the judge found that replacement of the roof by the tenant was not within the plain language under the terms of the lease and that the landlord was obligated to replace the roof on the building now 40 years old. The court concluded that the tenant properly noti-

fied the landlord of its intention to exercise its option to extend the lease for an additional five-year period.

The landlord contends that the language contained in paragraph 3 requiring tenant at its own expense to keep all buildings and improvements "in good repair," in conjunction with the proviso that "landlord shall not be obligated to incur any expenses for repairing any improvements on the demised premises" is sufficient to impose the obligation of replacing the roof upon the tenant.

■■ ■ It is instructive to review the ordinary meaning of the word "repair" as defined in Webster's Third New International Dictionary, to wit: to restore by replacing a part or putting together what is torn or broken: FIX, MEND. (Webster's Third New International Dictionary 1923 (1986).) The word "repair" involves the idea of something preexisting; the term contemplates an existing structure the condition of which has been affected by decay, waste, injury, or partial destruction. (76 C.J.S. *Repair* §314, at 1170 (1952).) An ordinary covenant of "good repair" does not include replacement of a roof which has become so run down that it cannot be repaired. *Scott v. Prazma* (Wyo. 1976), 555 P.2d 571.

Upon review of the lease, we note the absence of any express language pertaining to the roof, although the lease requires defendant, as lessee, to keep the demised premises in "good repair." A general covenant of the tenant to repair, or to keep the premises in repair, merely binds him to make the ordinary repairs reasonably required to keep the premises in proper condition; it does not require him to make repairs involving structural changes, or to make renewals and replacements which would last a lifetime. 51C C.J.S. *Landlord & Tenant* §1 *et seq.* (1968).

■■ ■ In order to shift to the tenant a burden which would naturally fall on the landlord, the warrant for the change should be plainly discoverable in the lease. (*Kaufman v. Shoe Corporation*, 24 Ill. App. 2d at 438, 164 N.E.2d at 620.) The record indicates that the landlord in this case was a sophisticated investor in over 600 commercial real estate properties. It is reasonable to infer that it had acquired sufficient business acumen in managing these extensive real estate holdings to realize that the party responsible for undertaking any substantial improvement to the premises, such as replacement of the roof at an estimated cost of $760,000, must be specifically addressed in the lease.

■■ We find that the court correctly concluded that the landlord must bear the burden of replacing the roof on the demised premises, and that the tenant is not in default and may extend the lease term.

At the conclusion of trial, the judge acknowledged that his holding "could well be characterized as an unfair result" in view of the decreasing monthly rental schedule which falls far below the market value of the property. However, this court has found it unfair to require a lessee to provide substantial permanent improvements necessary to his enjoyment of the lease which he could not have foreseen when the term began. *Koenigshofer v. Shumate* (1966), 68 Ill. App. 2d 474, 477, 216 N.E.2d 195, 196.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

EGAN and LaPORTA, JJ., concur.