QUINCY MALL, INC., Plaintiff-Appellant, v. KERASOTES SHOWPLACE THEATRES, LLC, Defendant-Appellee.

Fourth District   No. 4—08—0409

Opinion filed February 27, 2009.

Kent R. Schnack, of Schnack Law Offices, of Quincy, for appellant.

Craig A. Randle, of Londrigan, Potter & Randle, P.C., of Springfield, for appellee.

JUSTICE STEIGMANN delivered the opinion of the court:

In December 2005, plaintiff, Quincy Mall, Inc. (hereinafter the Mall), sued defendant, Kerasotes Showplace Theatres, LLC (hereinafter Showplace), to recover unpaid rent due under the parties' commercial lease. In May 2008, the trial court granted summary judgment in favor of Showplace.

The Mall appeals, arguing that by granting Showplace's motion for summary judgment, the trial court erroneously (1) imposed on the Mall, as a commercial landlord, a duty to replace its tenant's roof and (2) allowed Showplace to set off rental payments after Showplace replaced the roof. Because we conclude that the trial court did not err in either regard, we affirm.

## I. BACKGROUND

In November 1978, the Mall entered into a 30-year commercial lease with Dickinson, Inc. (hereinafter Dickinson)—a movie theater business—under which Dickinson would occupy the Mall's theater in exchange for a rent of $5,000 per annum plus a percentage of Dickinson's net sales to be paid monthly. In July 1979, Dickinson constructed an additional theater. The Mall and Dickinson later entered into a supplemental agreement in which the parties agreed, in pertinent part, to incorporate the newly constructed theater. In June 1994, Dickinson assigned its interest in the lease to Kerasotes Theatres, Inc. (hereinafter Kerasotes).

In May 2003, Kerasotes had the theater's roof inspected because it had been leaking. Approximately one month later, Kerasotes assigned its interest in the lease to Showplace, a separate corporation. In July 2003, Showplace sent the Mall a letter asking it to replace the roof. The Mall did not respond.

In January 2004, Showplace's attorney sent the Mall another letter, which included documentation of the cost of the roof replacement and which stated as follows:

> "As it is the [Mall's] responsibility to replace the roof, [Showplace], by this letter, is making demand upon the [Mall] for reimbursement of the replacement cost. [Showplace] is willing to advance the cost of the replacement to be set off against future rents. If [the Mall] prefer[s], [it] may reimburse [Showplace] directly. The replacement will occur as soon as weather permits. Upon completion of and payment for the replacement, [Showplace] will initiate the set off unless you wish to reimburse [Showplace] in a lump sum or pay the contractor directly."

The Mall responded by letter later that month, asserting that the roof replacement was Showplace's responsibility. The Mall cited the following section of the parties' lease agreement in support of its assertion:

> "Tenant agrees during the term hereof to keep and maintain in good condition and repair, the demised premises and every part thereof, including without limitation the foundations, exterior walls, roof, exterior and interior portions of all doors, windows, plate glass, etc."

On February 12, 2004, Showplace responded by letter to the Mall's claim that the roof replacement was Showplace's responsibility, asserting, in pertinent part, as follows:

"It would appear from your correspondence *** that there is no dispute as to the inability to make meaningful repairs upon the roof and the resultant necessity to replace it. Obviously, [Showplace] differs with regard to [the Mall's] interpretation of the lease and the distinction between providing a new roof as opposed to making ordinary repairs.

Since [the Mall's] letter does not challenge the necessity of replacement nor the estimated cost thereof, [Showplace] is proceeding with the roof replacement, which [its] contractors advise may begin as early as Monday, February 16, 2004, weather permitting. In doing so, [Showplace] does not waive any right it has to reimbursement and/or damages relative to the [Mall's] responsibility."

The Mall did not respond to this letter.

Later in February 2004, Showplace (1) entered into a contract to have the roof replaced and (2) sent the Mall a letter informing the Mall that it (a) had entered into a contract to have the roof replaced and (b) would be setting off the entire cost of the roof replacement from its rent obligation.

In February and March 2004, Showplace replaced the roof at a cost of $79,298. Between June and December 2005, Showplace set off $79,298 from the rent due under its lease agreement with the Mall.

In December 2005, the Mall sued Showplace to recover unpaid rent due under the parties' lease. In January 2006, Showplace (1) answered the Mall's complaint, denying it owed the Mall rent, and (2) counterclaimed, (a) requesting that the trial court declare that Showplace had satisfied all of its contractual obligations to pay rent when it replaced the Mall's roof and (b) arguing that the Mall was in breach of contract. Each party thereafter filed motions for summary judgment.

In August 2007, the trial court (1) granted partial summary judgment in Showplace's favor, finding that, as a matter of law, the parties' lease charged the Mall with the duty to replace the roof once the roof was beyond practical repair; (2) denied the Mall's motion for summary judgment, finding that Showplace had the right to set off the expense of replacing the roof; and (3) setting the case for trial on certain factual issues regarding whether the roof required replacement. In May 2008, the court granted Showplace's second motion for summary judgment, finding that no question of fact existed as to the necessity for replacing the roof. (On appeal, the Mall is not contesting

the trial court's conclusion from the second summary judgment order that the roof needed to be replaced.)

This appeal followed.

## II. ANALYSIS

The Mall argues that by granting Showplace's motion for summary judgment, the trial court erroneously (1) imposed on the Mall, as a commercial landlord, a duty to replace its tenant's roof and (2) allowed Showplace to set off payments after Showplace replaced the roof. We address the Mall's contentions in turn.

### A. The Standard of Review

A trial court should grant summary judgment only when no genuine issue of material fact exists. *Hernandez v. Alexian Brothers Health System*, 384 Ill. App. 3d 510, 518, 893 N.E.2d 934, 940 (2008). "Summary judgment is proper where, when viewed in the light most favorable to the nonmoving party, the pleadings, depositions, admissions, and affidavits on file reveal that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Northern Illinois Emergency Physicians v. Landau, Omahana & Kopka, Ltd.*, 216 Ill. 2d 294, 305, 837 N.E.2d 99, 106 (2005). We review *de novo* a trial court's decision to grant or deny a motion for summary judgment. *Coole v. Central Area Recycling*, 384 Ill. App. 3d 390, 395, 893 N.E.2d 303, 308 (2008).

### B. The Mall's Claim That the Trial Court Erred by Finding That It Was Responsible for Replacing the Roof

The Mall argues that the trial court erred by imposing on it, as a commercial landlord, a duty to replace the roof. Specifically, the Mall contends that its commercial tenant, Showplace, was responsible for replacing the roof because of the parties' lease agreement. We disagree.

■ "A general covenant of the tenant to repair, or to keep the premises in repair, merely binds him to make the ordinary repairs reasonably required to keep the premises in proper condition; it does not require him to make repairs involving structural changes, or to make renewals and replacements which would last a lifetime." *Sandelman v. Buckeye Realty, Inc.*, 216 Ill. App. 3d 226, 230, 576 N.E.2d 1038, 1040 (1991). To shift this burden from the landlord to the tenant, the warrant for the change must be "plainly discoverable" in the parties' lease. *Sandelman*, 216 Ill. App. 3d at 230, 576 N.E.2d at 1040.

In *Sandelman*, the court held that because the parties' lease agreement did not contain a plainly discoverable clause that would demonstrate that the tenant was required to replace the roof, the landlord was responsible for replacing it. *Sandelman*, 216 Ill. App. 3d

at 230-31, 576 N.E.2d at 1040-41. The pertinent part of the parties' lease in *Sandelman* was titled "Condition and Upkeep of Premises" and stated as follows:

" 'Tenant at its own expense during the term of this lease or any extension thereof will keep said premises and all buildings and improvements of permanent character *** in good repair, replacing all broken glass with glass of the same size and quality as that broken; and replace all damaged plumbing, electrical[,] and other fixtures with other of equal quality, and will keep said premises in a clean and healthful condition *** and upon termination of this lease, in any way, will yield up said premises to [l]andlord in good condition and repair (ordinary wear excepted) ***. ***

* * *

Landlord shall not be obligated to incur any expense for repairing any improvements on the demised premises or connected therewith during the term of this lease or any extension thereof.' " *Sandelman*, 216 Ill. App. 3d at 229, 576 N.E.2d at 1039-40.

■ In this case, the Mall claimed that the section of the parties' lease titled "Maintenance of Building, etc." was a sufficient basis upon which to shift the burden of replacing the roof to Showplace as its commercial tenant. The "Maintenance of Building, etc." section of the parties' lease stated, in pertinent part, as follows:

"Tenant agrees during the term hereof to keep and maintain in good condition and repair, the demised premises and every part thereof without limitation the *** roof ***. The [t]enant further agrees to keep the demised premises at all times in good order, condition and repair, and agrees that the demised premises shall be kept in a clean, sanitary, and safe condition in accordance with the laws and regulations of any governmental authority having jurisdiction over the same.

Tenant covenants and agrees to leave the demised premises in a good condition at the expiration of the term hereof, reasonable wear and tear and damage by fire or the elements accepted [*sic*]."

Similar to the general repair clause in *Sandelman*, the above clause from the parties' lease agreement in this case is a general repair clause, falling short of the "plainly discoverable" provision, which requires clear and unambiguous language. See *Miner v. Fashion Enterprises, Inc.*, 342 Ill. App. 3d 405, 417, 794 N.E.2d 902, 914 (2003) (a strong presumption exists against provisions that could have been included in a lease but were not). Here, while the parties' lease agreement is clear as to which party bears the burden to repair the roof, it does not address which party bears the burden to replace it.

Accordingly, the trial court did not err by granting Showplace's motion for summary judgment because, as a matter of law, absent a

plainly discoverable clause requiring Showplace, as tenant, to replace the roof, the burden to replace it fell to the Mall as landlord.

## C. The Mall's Claim That the Trial Court Erred by Allowing Showplace To Set Off Its Rent Payments

The Mall next argues that the trial court erred by allowing Showplace, its tenant, to set off payments. Specifically, the Mall asserts that a commercial tenant, like Showplace, does not have the right to suspend rent payments even when its landlord breaches a duty to repair or replace. We disagree.

Traditionally, the law governing lease agreements developed in the field of real property, rather than contract law. In the field of real property, a lease was considered a conveyance of an interest in real estate. *Leonard v. Autocar Sales & Service Co.*, 325 Ill. App. 375, 387, 60 N.E.2d 457, 462 (1945). Therefore, the expressed and implied duties of the parties were dealt with—at least in part—according to property law, rather than contract law, leading to the conclusion that the covenants of the parties were independent. *A.O. Smith Corp. v. Kaufman Grain Co.*, 231 Ill. App. 3d 390, 398, 596 N.E.2d 1156, 1162 (1992) ("The general rule is that the obligation to pay rent and the covenant to make repairs are separate and independent covenants"). Illinois courts have also long held that when a landlord fails to make repairs in violation of a covenant to do so, the tenant may, among other remedies, "make the repairs *** and deduct the cost from the rent." *Loy v. Sparks*, 304 Ill. App. 35, 38-39, 25 N.E.2d 893, 894-95 (1940), citing *Oppenheimer v. Szulerecki*, 297 Ill. 81, 86, 130 N.E. 325, 327 (1921).

■ "It is established law that liability for rent continues so long as the tenant is in possession and equally well established that a tenant may bring an action against his landlord for breach of a covenant or may recoup for damages in an action brought to recover rent." *Jack Spring, Inc. v. Little*, 50 Ill. 2d 351, 359, 280 N.E.2d 208, 213 (1972). Indeed, the argument that the landlord's claim is for rent and the tenant's is for damages should not be permitted to confuse the "sole and decisive issue," which, simply stated, is whether the tenant owes the landlord unpaid rent. *Jack Spring*, 50 Ill. 2d at 359, 280 N.E.2d at 213. Accordingly, we conclude that when a landlord breaches its lease with a tenant, the tenant continues to owe the rent. However, the tenant may meet its obligation to pay such rent by setting off the amount it spent to make its building fit for its commercial purpose.

■ Thus, when a commercial landlord fails to replace a critical component of the leased premises, which is vital to the operation of its commercial tenant's business—in violation of the landlord's duty to do

so, as previously discussed—the commercial tenant may set off such replacement cost, provided that (1) the tenant has informed the landlord of the need to replace the necessary component; (2) the landlord failed to replace the necessary component in a timely manner; and (3) the tenant informed the landlord of its intent to set off the reasonable costs of the necessary replacement.

■ Here, (1) Showplace gave the Mall written notice that the roof could not be repaired and had to be replaced, (2) the Mall failed to replace the roof in a timely manner, and (3) Showplace informed the Mall of its intent to follow through with (a) replacing the roof and (b) setting off the cost for such replacement. We note that the Mall did not dispute any of these facts at the trial level.

In short, the Mall was correct that Showplace's duty to pay rent was independent of the Mall's duty to replace the roof. However, Showplace was also correct that it met its duty to pay rent through the set off.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

McCULLOUGH, P.J., and TURNER, J., concur.