LAWRENCE E. RICHARDSON, Plaintiff-Appellant, *v.* BULK PETROLEUM CORPORATION *et al.*, Defendants-Appellees.

(No. 55863;

First District (4th Division)—April 18, 1973.

A. Denison Weaver, of Chicago, (Noah Walker, of counsel,) for appellant.

Kirkland & Ellis, of Chicago, (Leo K. Wykell, of counsel,) for appellees.

Mr. PRESIDING JUSTICE BURMAN delivered the opinion of the court:

The plaintiff, Lawrence E. Richardson, brought this action in the Circuit Court of Cook County to recover damages for personal injuries sustained while on the premises of a gasoline station allegedly operated by the Bulk Petroleum Company, either by itself or through its agent, James Goodwin. The trial court granted summary judgment in favor of Bulk Petroleum, and the plaintiff instituted this appeal. The sole issue is whether the trial court erred in granting summary judgment for Bulk Petroleum.

In his amended complaint, the plaintiff alleged that on January 11, 1970, he entered the gasoline station in question, located at 6350 South Stony Island Avenue in the City of Chicago, with the intent of purchasing a package of cigarettes. While on the premises he was struck by an employee of the station and sustained injuries which resulted in the loss of an eye. It was undisputed that the premises were owned by Bulk Petroleum and leased to James Goodwin by a written agreement for a term which ran from August 1, 1967, to July 31, 1968. At the time of the incident which resulted in the plaintiff's injuries this term had expired, and Goodwin continued to occupy the premises on a month-to-month basis as provided for in the written agreement.

The written agreement, a copy of which was attached by Bulk Petroleum to its motion for summary judgment, contained provisions usual in leases of commercial real estate, including the following, which the plaintiff urges are particularly relevant to this appeal:

"3. Since the rent payable depends on the amount of sales on the demised premises, Lessee agrees to keep leased premises open for operation for such hours and days as are necessary to serve and develop the business available, and that Lessee will use his best efforts to promote sales in a good and business-like manner.

4. Lessee shall furnish a daily sales report for all gasoline, cigarettes, and self-liquidating premiums. Lessor shall have the right to audit the books of Lessee from time to time for the purpose of ascertaining Lessee's volume of sales and to examine the premises and property thereon and his compliance with the terms of this lease.

5. As an additional consideration for the demise of said premises, Lessee agrees to pay daily, at the time and manner for rent payments, for all petroleum products and other items purchased from Lessor when such petroleum products and other items are resold by Lessee.

\* \* \*

11. Upon Lessee's default or failure to perform any of the covenants of this lease, Lessor may forthwith without notice declare this lease at an end, and immediately re-enter and re-possess said premises, equipment and fixtures."

Also in the record is the deposition of John K. Williams, a sales supervisor of the Gulf Oil Company, the parent corporation of Bulk Petroleum. Williams testified that at the time of the incident it was the practice for a "sales supervisor" to visit gasoline stations leased by Bulk Petroleum, including the one leased to James Goodwin, every week to ten days. The duties of the sales supervisor were to promote the sale of Gulf products by the station operators and to "counsel" the operators with respect to violations of their leases. If the sales supervisor found that a station was not being maintained in accordance with the standards set by Gulf, he and other office personnel had "greater counselling" with the operator. If this counselling did not produce results, Gulf would seriously consider terminating the operator's lease.

On appeal, the plaintiff contends that the frequent visits of the sales supervisor, coupled with the power of Bulk Petroleum to terminate Goodwin's lease without notice if he did not perform his covenant to use his best efforts to promote sales, amounted to such close control over the actual method of operation that a question is raised as to whether Goodwin was in fact the agent or employee of Bulk Petroleum.

Bulk Petroleum opposes this and argues that its relationship with Goodwin was nothing more than that of lessor and lessee of real property and the improvements thereon.

█ ██ It is a well established principle of the law of landlord and tenant that where a landowner has turned over possession and control of demised premises to a tenant, the landlord is not liable to a third person for injuries sustained as a result of the alleged negligence of the tenant or the tenant's employees. In *Elbers v. Standard Oil Co.*, 331 Ill.App. 207,

the court held as a matter of law that where the lessor of a gasoline station had no control over or possession of the premises upon which an invitee was injured there was no liability on the part of the lessor. The court said:

> "We have read the cases cited by the parties and agree with defendant that the courts have uniformly held that the law of landlord and tenant applies wherever the station operator is in fact an independent contractor."

331 Ill.App. at 222.

■ In the present case it is undisputed that Goodwin was in complete possession of the station facilities. The pivotal question is whether he or Bulk Petroleum was in control of them at the time that the plaintiff was injured. The plaintiff emphasizes the provisions in the written agreement, which we have set forth, in an effort to show that the relationship between Goodwin and Bulk Petroleum was more than that of an ordinary lessor and lessee. After reviewing these provisions, as well as the remainder of the agreement, we disagree. It is a common practice for the rent on real estate which is to be used for sales to be proportionate to the volume of business transacted there, and when such a provision is present, it is usual for the agreement to contain some provision to the effect that the lessee will use his best efforts to maintain and promote the business upon which the rent is based. It is customary for leases of this type to require the lessee to report the volume of his business to the lessor periodically so that the rent may be set accordingly and for the lessor to retain certain rights of inspection in order to verify the accuracy of such reports. Additionally, a clause allowing the lessor to declare the lease terminated and reenter the demised premises upon the lessee's breach of one or more of the covenants undertaken by him is virtually a standard provision in all leases. Therefore, the agreement between Goodwin and Bulk Petroleum is not unusual, and we see nothing in it which would justify a departure from the general rule enunciated above.

■■ The plaintiff also argues that the role of the sales supervisor was such that Bulk Petroleum, acting through him, maintained effective control over the way in which the station operators carried on their businesses. In his deposition Williams testified that the main function of the sales supervisors was to promote the sale of Gulf products and that they carried this out by finding dealers, placing them in stations and counselling them on "good business practices, management, selling [and] merchandising." It is likely that this counselling did have some effect upon the way in which the dealers operated their businesses. Presumably they would have been disposed to follow the advice of the sales supervisors, which was intended to benefit all parties concerned by

increasing sales. We do not believe, however, that this is sufficient to raise a question of agency or employment when considered in light of the entire record. For example, it is undisputed that Goodwin had complete discretion in the hiring and firing of his employees. He did not have to obtain permission from Bulk Petroleum or Gulf to hire a particular person and did not have to provide any information about the persons that he hired. He was responsible for his employee's payroll, including withholding, workmen's compensation and social security taxes. He alone paid the sales tax on merchandise sold at the station. He determined such things as whether his employees would wear uniforms and he procured them at his own expense. He alone was responsible for the cleanliness and maintenance of the station. In short, Goodwin had all of the rights and prerogatives normally ascribed to independent contractors, and these were not limited in any way by Bulk Petroleum or Gulf.

For these reasons we conclude that the trial court was correct in finding that the present case involves no question of agency and in granting summary judgment for defendant Bulk Petroleum Company. The judgment is affirmed.

Affirmed.

ADESKO and DIERINGER, JJ., concur.