NATIONAL TEA COMPANY, Plaintiff-Appellant, *v.* GAYLORD DISCOUNT DEPARTMENT STORES, INC., *et al.*, Defendants.—(GAYLORD DISCOUNT DEPARTMENT STORES, INC., Defendant-Appellee.)

First District (3rd Division)    No. 79-2044

Opinion filed September 30, 1981.

Clausen, Miller, Gorman, Caffrey & Witous, P. C., of Chicago (James T. Ferrini and Robert E. Gilmartin, of counsel), for appellant.

Kiesler & Berman, of Chicago (Clinton J. Feil and Robert L. Kiesler, of counsel), for appellee.

Mr. JUSTICE WHITE delivered the opinion of the court:

Plaintiff, National Tea Company (National), appeals from orders of the circuit court of Cook County granting summary judgment to defendant, Gaylord Discount Department Stores (Gaylord). National originally brought suit against Gaylord and two of Gaylord's licensees, Diane Costume Jewelry and Strathmax Corporation (hereinafter Diane and Zayre, respectively) for property damage resulting from a fire which occurred in a building occupied by Gaylord, its licensees, and National.

The complaint alleges as to each defendant exclusive control of the premises in which the fire took place and contains as to each two counts, one stating that the fire would not have occurred but for the defendant's negligence—in essence seeking recovery under the theory of *res ipsa loquitur*—the other alleging that the defendant was guilty of certain specific acts of negligence including:

> "(g) carelessly, negligently and improperly installed, operated, controlled and maintained certain lighting fixtures in the store room area so as to allow the light ballast therein to ignite, thereby causing a great and destructive fire to occur, which fire did occur."

All of the defendants in their answers denied these allegations and after some discovery all filed motions for summary judgment. In response to Gaylord's motion, National filed the affidavit of its expert, Roy A. Matin, which stated that in his opinion one of the fluorescent light fixtures above the Zayre and Diane storage area failed and ignited the fire. The motions of the licensees, Diane and Zayre, were granted on the basis that neither had custody nor control of the lighting fixtures nor duty to maintain them. National has not appealed from those judgments.

The trial court, on May 3, 1979, entered partial summary judgment in favor of Gaylord on all of count I based on *res ipsa loquitur* and on all of count II charging specific acts of negligence except subparagraph (g) set out above. In the order, the trial court found that there was no just reason to delay enforcement or appeal. (Ill. Rev. Stat. 1979, ch. 110A, par. 304(a).) On October 19, 1979, the trial court disposed of the remaining charge, entering final judgment for the defendant, Gaylord, and against the plaintiff, National. National on appeal seeks reversal of the orders granting Gaylord's motion for summary judgment.

Gaylord initially contends that the partial summary judgment order became final and appealable at the time it was entered on May 3, 1979. It is argued that because National filed no appeal from that order within the permissible 30-day time period (Ill. Rev. Stat. 1979, ch. 110A, par. 303(a)), the validity of the order cannot now be reviewed. Plaintiff argues in response that the order of May 3, 1979 was not a final order as it was bottomed on *res ipsa loquitur* and as such does not operate to dispose of any issue or theory of recovery in the case. We agree.

■■■ Where the bases of recovery for separate counts are different, and where the trial court finds that there is no just reason for delaying enforcement or appeal, the dismissal of a count is appealable because it disposes of a distinct cause of action. (*Cunningham v. Brown* (1961), 22 Ill. 2d 23, 174 N.E.2d 153; *Weber v. Northern Illinois Gas Co.* (1973), 10 Ill. App. 3d 625, 295 N.E.2d 41.) However, merely because the dismissal order contains a finding that there is no just reason for delaying enforcement or appeal, does not mean that the order is final and appealable if the

order is not in fact final. Where summary judgment is directed to a pleading founded upon *res ipsa liquitur*, and there are other counts pending, the summary judgment does not constitute a final order and cannot immediately be appealed. (*Crane Paper Stock Co. v. Chicago & Northwestern Ry. Co.* (1976), 63 Ill. 2d 61, 344 N.E.2d 461; *Prado v. Evanston Hospital* (1979), 72 Ill. App. 3d 622, 390 N.E.2d 1270.) "A final order is one which either terminates the litigation between the parties on the merits or disposes of the rights of the parties upon the entire controversy or some definite part thereof." (*Cohen v. Sterling Nursing Home, Inc.* (1978), 57 Ill. App. 3d 162, 372 N.E.2d 934; *Smith v. Interstate Fire & Casualty Co.* (1977), 47 Ill. App. 3d 555, 362 N.E.2d 38; *Rizzo v. Board of Fire and Police Commissioners* (1975), 33 Ill. App. 3d 420, 337 N.E.2d 735.) *Res ipsa loquitur* is not a separate theory of recovery; rather, it is a rule of evidence which gives rise to an inference or presumption of negligence by circumstantial evidence. 58 Am. Jur. 2d *Negligence* §475, 516 (1971); *Metz v. Central Illinois Electric & Gas Co.* (1965), 32 Ill. 2d 446, 448-50, 207 N.E.2d 305; *Rinck v. Palos Hills Consolidated High School District No. 230* (1979), 82 Ill. App. 3d 856, 403 N.E.2d 470.

Counts I and II were both predicated on the theory of negligence. Therefore, summary judgment as to the *res ipsa* count did not determine the merits of a distinct cause of action or serve to terminate any party's rights. It was merely a ruling by the trial judge that the facts would not support a presumption of negligence. It was not until the order of October 19, 1979, was entered granting summary judgment in favor of Gaylord on National's allegations of specific negligence that the earlier order became final and appealable. For these reasons, we conclude that the judgment order of October 19, 1979, and the partial summary judgment order of May 3 on count I are reviewable at this time.

It is National's position that Gaylord owed National a duty of care arising out of Gaylord's control and right of control over the fire-causing instrumentalities, the fluorescent light fixtures. The trial court in the order of October 19, 1979, found, as is necessary in summary judgments, that there were no genuine issues of fact remaining between the parties. National's complaint alleges Gaylord occupied and had exclusive possession and control of the premises containing the fixtures. Gaylord's answer denies this, creating issues of fact. Resolution of those issues if adverse to National would terminate its right to proceed on both count I, which sounds in *res ipsa loquitur*, and count II, which sounds in specific acts of negligence. By what process then had those issues been resolved, and on what basis was the resolution in favor of Gaylord and against National? Gaylord asserts here that control of the light fixtures and the electrical ballasts contained therein can be gleaned from three things: the lease, the license, and the light bulbs. We examine the three to determine if they or

any of them determine the issue of whether Gaylord controlled the light fixtures.

■■ Gaylord occupied the premises under a lease from Klefstad Engineering Company, Inc., and contends that Klefstad, the lessor under the terms of the lease, had the duty to maintain the light fixtures. Generally, under Illinois law, a tenant or occupier of leased premises, and not the owner, is responsible for injuries from a defective condition of the demised premises. (*Hardy v. Montgomery Ward & Co.* (1971), 131 Ill. App. 2d 1038, 267 N.E.2d 748.) In absence of a lease provision to the contrary, Gaylord, the tenant in possession, would be responsible for injury or damage caused by a defective condition of the demised premises. Where a landlord has turned over possession and control to a tenant he is not liable to third persons for injuries sustained as the result of alleged negligence of a tenant or a tenant's employees. (*Richardson v. Bulk Petroleum Corp.* (1973), 11 Ill. App. 3d 655, 297 N.E.2d 405.) In support of Gaylord's contention that its lessor, Klefstad, had the duty to maintain the light fixtures, we are referred to a lease dated July 14, 1961, under which the property was demised to Gaylord. The lease provides in pertinent part:

> "*The Lessor further covenants and warrants to make all structural repairs to the building for the period of the lease.* * * * *Lessor will also furnish all necessary electric light and power service lights, including proper wiring,* in the premises, and gas pipes for gas service, *and the Lessor will at its own expense, supply any apparatus, appliances or materials not peculiar to or necessitated by* Lessee's occupancy except those items which are specifically stated in the plans and specifications which are to be furnished by Lessee, and will do any repairing or rebuilding in or about the leased premises which may be required or ordered by law or lawful authority. *It is further covenanted that the Lessor will install adequate* water and *electrical supply* and chimney outlets *and provide* a suitable heating plant, air conditioning, *lighting fixtures,* floors, toilets and plumbing." (Emphasis added.)

Gaylord correctly states that within the four corners of the lease there is no basis to assert that Gaylord had control of the electrical ballasts alleged to have caused the fire. But the statement stands the law of Landlord and Tenant on its head. The issue is, does anything in the lease relieve Gaylord, the tenant in possession, of its duty to maintain the premises in good repair. The lease clearly gives Gaylord exclusive possession of the rented premises. However, Gaylord maintains that the lease shifts the obligation to maintain the light fixtures to Klefstad, the lessor, through the lessor's covenant to make all structural repairs to the building for the

period of the lease. We do not find this provision supportive of Gaylord's position. An applicable analysis was made in *Hardy v. Montgomery Ward & Co.* (1971), 131 Ill. App. 2d 1038, 267 N.E.2d 748, wherein the court held that plaster which fell from the ceiling and struck a customer in the tenant's store was of an interior, nonstructural nature. It was cosmetic or superficial; it did not fall within the concept of structural, which extends only to such objects as floors, joists, rafters, walls, partitions, studs, supporting columns and foundations. Plaster, the *Hardy* court said, was not part of the structure but rather fell from the structure. By the same token, the lighting fixtures were not part of the structure but were merely affixed to the structure. If the lessor were to be obligated to repair fixtures, the lease could have and would have plainly so stated.

The lease further provides that Klefstad, the lessor, will also furnish all necessary electric light and power service lights, including proper wiring. However, we do not conclude from this language that Klefstad retained a duty to conduct regular inspection and maintenance of the light fixtures after the premises were leased to Gaylord. The language does not relieve Gaylord of the responsibility which normally flows from its position of lessee in possession to maintain the premises, including the light fixtures, in good condition.

Part of the premises leased from Klefstad by Gaylord were occupied by Gaylord's licensees, Diane and Zayre. Both National and Gaylord refer to the licensing agreements in interpreting the Gaylord-Klefstad lease. Although it is not clear how licenses with third parties could affect a landlord-tenant relationship established by a written lease, we examined the agreements. Suffice it to say we found nothing therein which would relieve lessee Gaylord of the duty to maintain the light fixtures and place that duty on the lessor.

■■ Light bulbs throughout the store, including the areas in question, were frequently changed by Gaylord's stockboys. From this and other evidence, National argues that Gaylord maintained and thereby assumed responsibility for the lighting fixtures. Gaylord responds that under this logic any tenant who changes a light bulb on leased premises assumes control and responsibility for the entire light fixture. This conclusion need not be reached for appellant to prevail. There is no doubt that liability may arise out of a negligent act committed by one who has possession and control of property without regard to the character of his interest in that property. (*Conway v. Epstein* (1964), 49 Ill. App. 2d 290, 200 N.E.2d 16.) Evidence that Gaylord employees changed the bulbs, and that Gaylord caused repairs to be made to the electric fixtures was at least some evidence rebutting Gaylord's denial of control of the fixtures. It cannot truly be said that there is no material issue of fact between the parties as to

control of the fixtures. On the contrary, we find sufficient questions of fact to require denial of Gaylord's motion for summary judgment unless support therefor is found elsewhere.

Gaylord further asserts that the undisputed facts show Gaylord was not guilty of negligence, because no course of conduct reasonably available to it would have prevented the fire occurring in the manner described by National's own expert. On this basis, it is contended that the trial court did not err in granting Gaylord's motion for summary judgment.

Roy A. Martin, an electrical engineer who testified as an expert witness for National, stated on deposition that in his opinion one of a group of 12 lights failed, and ignited a fire which spread to the rest of the store. At the time of the fire the building and presumably some of the lights were 10 years old. The average life of ballasts in these lights was 7 to 12 years. Some die very quickly; some live far longer. Symptoms of impending failure are flickering and a strong odor of hot asphalt compound dripping from the fixture. While the majority of ballasts do produce these warning signs of failure, some do not. Mr. Martin testified that ballast failure can result from several factors in addition to age including: leaving burned out light tubes in place causing overheating, and failing to clean the fixture. He testified that there should be periodic inspections of the lamp sockets and internal wiring, and that the fixtures should be examined for drippings or tar spots.

The record indicates that there was a fire in a ballast shortly before the fire in question and about a year before sparks and fire required Gaylord to call in an electrician. Gaylord's assistant manager stated that ballasts have a tendency, after they get old, to fail and that sometimes they would get so hot they could catch on fire. National argues Gaylord had the affirmative obligation, in view of its recognition of the dangers presented by aged ballasts and in view of the signs of impending disaster which it had observed (the prior fires), to replace the ballasts or, at the very least, to conduct the very necessary maintenance and inspections. Apart from age, the ballasts were dangerous if not properly maintained. Bulbs had to be promptly replaced upon burnout. The responsibility was Gaylord's and, as explained by Mr. Martin, Gaylord's failure to change bulbs could cause fire. Also, dirt had to be removed. Additionally, impending failure would be revealed by tar spots and drippings, and those could be observed only upon inspection.

Since at times these fixtures fail without warning, Gaylord submits that there was no course of conduct reasonably available to it which could have prevented the fire.

"Could closer or more frequent inspections have made a differ-

ence? Gaylord submits that even if Mr. Martin himself and eleven other equally qualified electrical engineers were standing on ladders carefully examining each of these ballasts, one minute prior to the alleged failure of one of the twelve ballasts, they could not have known, without some symptoms, that there would be a failure.

Even with the above suggestions, daily replacement of electrical ballasts or a battery of engineers or the use of ballast watchers, Gaylord could not guarantee the prevention of a fire such as the one allegedly caused by an electrical ballast. Such ballasts can and do fail spontaneously."

■■ Does the fact that these light fixture ballasts at times fail spontaneously and without warning relieve defendant of the duty to inspect and maintain them properly? We think not. Regular inspection could certainly prevent fires from occurring in the majority of the fixtures which give the warning signals of flickering and the smell of hot tar. There was evidence that removing burned-out bulbs and avoiding the collection of excessive dirt could reduce the chances of fire. Gaylord points out that even if all of the preventive steps suggested by National's expert were taken, this still could not guarantee the prevention of the fire. The fixture which caused the fire nonetheless could have gone undetected. It cannot be said but for Gaylord's failure to take the preventive measures the fire would not have occurred. This alone, however, cannot insulate Gaylord from liability. A similar claim was made by defendants in *Maryland v. Manor Park Real Estate & Trust Co.* (4th Cir. 1949), 176 F.2d 414. There the complaint charged that a tenant's death of typhus transmitted by means of the bite of a flea from an infected rat was caused by the negligence of defendant in failing to take adequate measures to exterminate the rats on the premises. The trial court ruled that there must be proof that but for defendant's negligence the deceased would not have contracted typhus and died. The United States Court of Appeals rejected this and held:

" [T]he final conclusion that the government must be relieved from liability because of the possibility that the death-bearing rat might have survived all efforts to eliminate it cannot be upheld. It is true that a defendant's liability for negligence may not be based upon mere surmise or speculation, but it is equally true that findings based upon a preponderance of evidence may not be avoided by indulging in mere conjecture. * * * In the language of the Restatement of Torts, §432 Comment c, if the actor's negligence, either of act or omission, results in harm of the sort from which the duty was designed to protect the other, his negligence may be

814

regarded as a substantial factor in bringing about the harm in spite of the fact that the same harm might possibly have been sustained had the actor not been negligent."

In the case at bar the acts or omissions of Gaylord could be regarded as substantial factors in bringing about the fire in spite of the fact the evidence shows that the fire might possibly have occurred even if Gaylord had not been negligent. The plaintiff is not required to exclude every other possible cause of the accident. Causation is a question of fact for the jury. *Repinski v. Jubilee Oil Co.* (1980), 85 Ill. App. 3d 15, 405 N.E.2d 1383.

■■ We do not find as did the trial court that on the basis of admitted facts that the issues of control, negligence and causation undergirding plaintiff's claims were foreclosed as a matter of law. The orders granting summary judgment are therefore reversed and the case remanded.

Reversed and remanded.

RIZZI, P. J., and McGILLICUDDY, J., concur.