HUMBLE OIL & REFINING COMPANY *vs.* FRANK J. LENNON *et al.*

JUNE 18, 1962.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

510

CONDON, C. J.   This is a bill in equity for specific performance of an option to purchase contained in a lease.   The

cause is here on the respondents' appeal from a final decree of the superior court granting the relief prayed for. The respondents filed fourteen reasons of appeal but in their brief they have compressed them into four hereinafter set forth and discussed.

The facts are undisputed. On August 18, 1936 respondents as lessors entered into a written indenture of lease with Colonial Beacon Oil Company as lessee of certain premises on the westerly side of York avenue between Robinson and Central avenues in the city of Pawtucket for five years beginning November 1, 1936 and ending on October 31, 1941. Among the "terms, conditions and covenants" expressly incorporated therein are paragraphs numbered 7 and 10 which read as follows:

"7. Lessee shall have the privilege and option of renewing this Agreement for an additional periods [sic] of five (5) years such period to begin on the expiration of the first period herein granted, and upon the same terms and conditions as herein set forth and all of said privileges of renewal and extension shall be considered as having been exercised unless Lessee gives Lessor notice in writing at least thirty (30) days' [sic] prior to the expiration of the period then in effect of its intention not to exercise such renewal privilege."

"10. It is further understood and agreed between Lessor and Lessee that Lessee shall have the right and option to purchase the property hereinbefore described, for the sum of Fifteen thousand ($15,000) Dollars at any time during the term hereof. Lessor may terminate the right and option of the Lessee to purchase said property at any time on giving six months' notice of his intention so to do and the right and option of Lessee to purchase shall terminate on the expiration of six months after the receipt of such notice. In the event Lessee desires to exercise said right and option to purchase it shall give notice in writing of its intention so to do at least thirty (30) days' [sic] prior to the date when said sale is to be completed and at the time specified in said notice and upon the payment of said

purchase price Lessor will execute and deliver to Lessee or its successors or assigns a good and sufficient deed with full covenants and warranty and a good and sufficient bill of sale sufficient to convey to Lessee good and marketable title in fee simple to the property described herein free and clear of all liens and encumbrances of whatsoever kind and character."

On October 19, 1943 the parties entered into a written "Modification Of Lease" with reference to certain particulars of no consequence insofar as the pending cause is concerned, but because thereof an "Extension Of Lease" was entered into on February 12, 1946 wherein it was "agreed by the Lessor that a further option is granted to the Lessee to renew this Lease for a third period of Five (5) Years i. e. from November 1, 1956 to October 31, 1961, upon the same terms and conditions as set forth in the original term of said Lease."

Subsequently on December 31, 1947 Colonial Beacon Oil Company assigned "all its right, title and interest" in the lease to Standard Oil Company of New Jersey. Thereafter said company formally changed its name to "Esso Standard Oil Company." By formal agreement of merger duly filed in the office of the secretary of state of the state of Delaware on December 31, 1959 said Esso company was "merged with and into Humble Oil & Refining Company * * *."

On August 22, 1961 by letter of their attorneys respondents notified Humble "that the Lessors in exercise of their right by virtue of the terms and provisions of Paragraph Tenth of said lease, do hereby terminate the so-called 'right and option' to purchase therein contained." By letter of August 24, 1961 to said attorneys Humble acknowledged the above statement as a six-month notice by the lessors to terminate the option in accordance with paragraph 10. Within such six-month period by registered letter dated September 29, 1961 Humble notified the lessors that it "does hereby exercise its right and option to purchase the property described in said lease for the sum of $15,000.00,"

and was ready to pay said purchase price at Pawtucket city hall on October 30, 1961 at 10 a. m. Upon respondent lessor's refusal to sell, complainant brought its bill for specific performance.

After reviewing these facts at considerable length in her decision and adverting to the conflicting authorities on the question whether an option to purchase was included in the right to renew the lease, the trial justice expressly found that the right of renewal here was intended by the parties to include the option. She also concluded that since it appeared the parties freely executed the instruments and the lessors had not specifically reserved therefrom such option the lessee was entitled to exercise it. The complainant having in the trial justice's opinion fulfilled the terms of paragraph 10, she decided that the relief it sought should be granted.

The respondents contend that the trial justice erred for the following reasons: 1. That the option to purchase was an independent contract entirely severable from the contract of lease; 2. that as such it did not pass to the assignee of the lease by way of Colonial's assignment of its right, title and interest thereunder; 3. that as such it was not valid within the renewal term of November 1, 1956 to October 3, 1961 because it was not supported by consideration; and 4. that the long lapse of time since the option was given and the altered circumstances affecting the adequacy and inherent fairness of the stipulated purchase price clearly made it incumbent on a court of equity to refuse to exercise its discretion to grant specific performance. They finally argue that the trial justice misconceived the scope of her judicial function in the premises and therefore erred in not exercising such discretion.

We are of the opinion that there is no merit in respondents' first three reasons. It is clear from the language of the lease itself that the parties intended the option to pur-

chase should be deemed a part of the lease. Paragraph 10 is expressly included among the "terms, conditions and covenants" enumerated therein. In construing a lease the primary rule of construction is to seek the intention of the parties from the language which they have used to express it. In the present instance we perceive no difficulty in determining from such language that the option to purchase was not intended to be independent of or severable from the lease.

However, if there were any difficulty we would resolve it in favor of the same result by following the general rule of construction that such an option contained in a lease is an integral part of the whole contract. *Rogers* v. *Graves*, 254 App. Div. (N. Y.) 467; *Schaeffer* v. *Bilger*, 186 Md. 1; *Gordon* v. *Dufresne*, 205 Cal. 512; *Lexington Flying Service, Inc.* v. *Anderson's Ex'r*, Ky., 239 S.W. 2d 945. While there is some authority to support respondents' contention, *Pettit* v. *Tourison*, 283 Pa. 529, and *Levin* v. *Nedelman*, 142 N. J. Eq. 769, the great weight is to the contrary and in our opinion is founded on the better reason.

There is no merit in respondents' second reason of appeal. The assignment of December 31, 1947 to the Standard Oil Company of New Jersey conveyed all of Colonial's "right, title and interest" in the lease of August 18, 1936. In view of our opinion that the option to purchase was an integral part of the lease and since it is generally held such an option is a covenant running with the land and will go along with the term under a renewal clause unless a contrary intention clearly appears, there can be no question that the option passed to the assignee under the assignment here. *Schaeffer* v. *Bilger, supra; O'Connor* v. *Chiascione*, 130 Conn. 304; *Meadow Heights Country Club* v. *Hinckley*, 229 Mich. 291.

It would seem that at the time their attorneys sent the letter of August 22, 1961 giving the assignee notice of can-

cellation of the option in accordance with paragraph 10, the respondents themselves recognized that the option passed under the assignment. Be that as it may we cannot say that the trial justice erred in holding as she did that in the absence of a reservation of the option from the assignment it passed thereunder.

Under their third reason of appeal respondents contend that the option to purchase during the final renewal period of the lease from November 1, 1956 to October 31, 1961 was without consideration to support it. The respondents are mistaken in this contention probably because of their original misconception of the nature of an option to purchase contained in a lease with the right of renewal on the same terms and conditions as in the lease here. In the original lease the lessee's agreement to pay rent was sufficient consideration to support the option to purchase since such option being an integral part of the lease is a substantial part of the whole contract. *Rogers* v. *Graves, supra.* As the California court held in *Gordon* v. *Dufresne, supra,* since the lease and the option are not severable but form one document with interdependent provisions the covenant to pay rent supports the option as well as the right to occupancy.

On the view which we have taken of respondents' first and second reasons of appeal hereinbefore discussed, it must necessarily follow that what was true of the option in the original lease continued to be true of each renewal including that for the period commencing November 1, 1956. As was said in *Meadow Heights Country Club* v. *Hinckley, supra,* where a lease contains an option to purchase with a privilege to renew the lease on the same terms, the option continues into the renewal period since it is an integral part of the terms of the lease and runs with the demised land.

But in the circumstances here even if the option were without consideration respondents would nevertheless be

bound to perform. An option is a continuing offer and needs no consideration as such. If the offer is accepted before it is withdrawn there is a binding contract. According to the record Humble exercised the option precisely in accordance with its terms before respondents attempted to cancel it. No citation of authority is necessary to support the proposition that a binding contract to sell on the part of respondents resulted. This is elementary. Although complainant has cited authority in its support we perceive no need to refer to it in this opinion.

We shall now consider respondents' fourth reason. We have carefully read the trial justice's decision and we do not agree with respondents' characterization of her approach to the justiciable question before her. It is true that she examines the law and finds it to be in favor of complainant's construction of the pertinent documents in evidence but nowhere does it clearly appear that she was not aware of the well-established rule in a case of the kind before her, namely, that the grant of specific performance is not a matter of right but rests in the sound discretion of the court, *Holland* v. *Lavigne,* 88 R. I. 376, and that it should be exercised on equitable considerations in view of all the circumstances of the cause. *Finkelstein* v. *Tateosian,* 77 R. I. 310; *Gilman* v. *Murphy,* 67 R. I. 149.

Assuming that the trial justice was fully aware of the rule, what was the consideration of an equitable nature in the circumstances of the instant cause that should have prompted her to deny complainant relief? As far as we can determine from respondents' brief and their oral argument it consists solely of their assumption that the purchase price stipulated over 25 years ago in a period of depression is grossly unfair and inadequate in the light of the present economic situation. And they assert that complainant's demand for performance is in effect an inequitable exaction by a major oil company at the expense of a husband and

wife who acquired the real estate in question by dint of saving and personal effort.

There is no evidence in the record as to the present value of the premises. But even if there were and it showed a greatly enhanced value over the purchase price of $15,000, we are not prepared to say that such fact alone would justify this court in reversing the trial justice's decree for abuse of discretion. Mere inadequacy of consideration in the absence of fraud or other inequitable incident is insufficient to defeat specific performance. *Palmer* v. *Carpenter,* 54 R. I. 71. Nor do changed conditions warrant the modification of an express stipulation in a lease. *Beckwith* v. *Howard,* 6 R. I. 1.

This appears to be the settled rule in other jurisdictions. A lessor who gives the lessee an option to purchase at a named sum cannot avoid it merely because of the subsequently enhanced value of the property. *Polczynski* v. *Nowicki,* 227 Mich. 415. "The mere fact that the value of the property contracted for has increased or diminished since the contract was executed ordinarily will not warrant a refusal to carry out its terms, in the absence of circumstances indicating fraud or bad faith." *Keogh* v. *Peck,* 316 Ill. 318, 325.

In that case a lease for 99 years with an option to purchase for $10,000 was entered into in 1900. The premises were originally worth $9,000 but were later greatly enhanced in value by the improvement of Michigan avenue in Chicago in 1917. The lessors argued that such a radical change was not in contemplation when the parties entered into the lease and therefore it would be inequitable to grant specific performance, but the Illinois court could find no valid reason for taking such a view since the contract, it said, "was fairly and understandingly entered into and no circumstances of oppression and fraud appear." This is almost the precise situation in the case at bar. In such circum-

stances it was clearly not an abuse of discretion for the trial justice to grant the relief prayed for.

The respondents' appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Edwards & Angell, Edward F. Hindle, Ronald R. Lagueux,* for complainant.

*Woolley, Blais and Quinn, John S. Lennon,* for respondents.