# AVIATION ASSOCIATES, INC., Plaintiff

## v.

# VIRGIN ISLANDS PORT AUTHORITY, A Virgin Islands Corporation, Defendant

Civil No. 389/1987

Territorial Court of the Virgin Islands

Div. of St. Croix at Kingshill

December 14, 1990

IRWIN J. SILVERLIGHT, ESQ. (NICHOLS, NEWMAN AND SIL-
VERLIGHT), Christiansted, St. Croix, V.I., *for plaintiff*

PATRICIA M. FITCH, ESQ., Virgin Islands Port Authority, Charlotte
Amalie, St. Thomas, V.I., *for defendant*

PETERSEN, *Judge*

## MEMORANDUM OPINION AND ORDER

Plaintiff, Aviation Associates, Inc. (hereinafter "Aviation") brought suit against defendant Virgin Islands Port Authority (hereinafter "VIPA"), claiming damages arising from an alleged breach of a lease of commercial property at Alexander Hamilton Airport, St. Croix. Aviation is a sub-sublessee who is presently in possession of the property in issue. VIPA is owner-lessor and lessee of said property. VIPA became Owner-Lessor when, as an instrumentality of the Virgin Islands Government, it succeeded to the interests of the Virgin Islands Airport and Industrial Resources Authority (hereinafter "VIAIRA"). VIAIRA was created by the V.I. Government to operate the public airports in the U.S. Virgin Islands, and it was VIAIRA as owner of the property in issue who first executed the lease agreement now at the heart of this lawsuit. VIPA became Lessee when it accepted an assignment of the lease from First Pennsylvania Bank, N.A. (hereinafter "First Penn"). First Penn was mortgagee for the original lease and the subsequent subleases. After various foreclosures and purchases at U.S. Marshall sales, First Penn assigned its interests as Lessee to VIPA. Prior to the First Penn assignment, Aviation subleased from the sublessee, John and Caroline Stuart-Jervis.

In its current position of sub-sublessee in possession of the leased premises, Aviation contends that First Penn's assignment of all its right as Lessee to VIPA transferred all the Lessee's rights and obligations to VIPA. VIPA, on the other hand, suggests that when it accepted the assignment from First Penn it did not accept all the rights and responsibilities as Lessee under the original lease and the subsequent subleases. Having received motions for summary judgment from both sides, the Court must decide whether First Penn's Reassignment and Lease Surrender to VIPA was a mere transfer of rights without delegation of the Lessee's obligations.

It is the Court's conclusion that, in view of the clear and unambiguous language of First Penn's Reassignment and Lease Surrender dated May 20, 1986, there was a full and complete assignment to VIPA of the rights and obligations of the Lessee under the original lease and subsequent subleases. Accordingly, there being no material issue of fact, summary judgment will be entered in favor of Plaintiff against Defendant as a matter of Law.

26

## OPERATIVE FACTS AND PRIOR PROCEEDINGS

In a lease dated February 20, 1969 (also "Prime Lease"), VIAIRA leased 4.20 acres of unimproved land designated as Parcel No. 33, Alexander Hamilton Airport, Estate Mannings Bay to the Virgin Islands Airmotive Corporation (hereinafter "VIAC").[1] VIAC was granted a term of twenty-five (25) years with a renewal option.[2] The Lessee agreed to use the premises, together with all improvements, for the purpose of conducting a Fixed Base Operation and "Skytel" (motel or hotel and related facilities) and other aeronautical and related activities.[3] The Prime Lease further provided for Lessee to make certain improvements of the property: (1) construction of a utility building; (2) construction of a building space for aeronautical purposes; (3) construction of hangar facilities for aircraft storage; (4) pave ramp space for aircraft parking, maintenance and/or storage; (5) fence unenclosed area; and (6) construct a hotel (Skytel).[4] Lessee was further authorized to "install at its own cost and expenses such improvements as it may deem necessary subject to the condition that such installations are made in accordance with plans and specification approved in advance by the Agency and other government agencies and departments whose consent are otherwise required. The legal title to all improvements erected by or on the part of, or on behalf of, or for the benefit or use of the Lessee, shall remain in Lessee."[5]

In accordance with the provisions of this lease relating to construction by the Lessee, VIAC as lessee was required to "make any and all reasonable structural and non-structural improvements, alterations or repairs of the premises that may be required at any time hereafter by any such present or future rule, regulation, requirements, order or direction."[6] Section 12 of this Prime Lease further provided for Lessee at all times to keep the premises clean, in good order and repair.[7]

---

[1] Original Lease Agreement of February 20, 1969, Section 1, Page 1.

[2] Id. at Section 2, Page 2.

[3] Id. at Section 4, Page 7.

[4] Id. at Section 5, Page 9.

[5] Id. at Page 10.

[6] Id. at Section 9(I), Page 16.

[7] Id. at Section 12, Pages 18–20.

Subsequent to the execution of the Prime Lease, VIAC mortgaged its leasehold interest to First Penn Bank. Said interest was later foreclosed by First Penn and subsequently purchased by the bank at a U.S. Marshall sale. First Penn later assigned all its interest acquired by virtue of the U.S. Marshall Sale to Robert T. Stavely and Howard J. Taylor. A written Assignment of Lease was recorded in the Office of Recorder of Deeds, St. Croix. Stavely and Taylor in turn executed and delivered a mortgage covering the leasehold interest to First Penn.

Stavely and Taylor subsequently subleased, with the consent of VIPA, a portion of the leased premises to John Stuart-Jervis and Caroline Stuart-Jervis. The portion of the premises subleased to the Stuart-Jervises included the hangar and a paved ramp area in front of the hangar. Thereafter, the Stuart-Jervises subleased the premises they subleased from Stavely and Taylor to Aviation Associates, Inc. This sublease agreement was also recorded in the St. Croix office of the Recorder of Deeds.

First Penn once again foreclosed on the mortgaged leasehold which was held at the time by Stavely and Taylor. The interests of Stavely and Taylor were subsequently purchased by First Penn at a U.S. Marshall Sale. On May 20, 1986, First Penn assigned all its interest in the leasehold to VIPA. It is important to note at this juncture that, at all times since subleasing from the Stuart-Jervises, Aviation has remained in possession of the subleased premises, and Aviation's leasehold interest was not foreclosed by First Penn or any other mortgagee.

At the time of First Penn's assignment to VIPA First Penn held all the leasehold interests of Stavely and Taylor which included two sublease agreements: the Stavely and Taylor sublease to John and Caroline Stuart-Jervis and the John and Caroline Stuart-Jervis sublease to Aviation.

After making several demands on VIPA to repair the premises subleased from the Stuart-Jervises, Aviation repaired the premises and later brought this action in May, 1987 to recover the cost of the repairs. On December 11, 1987 Plaintiff filed a Motion for Summary Judgment. A copy of the motion was mailed to Defendant's counsel and Defendant failed to respond. At a hearing on February 17, 1988 this Court granted a Motion for Partial Summary Judgment to Plaintiff in the amount of Twenty-Five Thousand Four Hundred and Eighty-Three Dollars and Eighty-One Cents ($25,483.81) plus pre-

judgment interest. This judgment was later vacated because Defendant did not have notice of the February 17, 1988 hearing on the Motion for Summary Judgment, and VIPA's inability to timely respond to the Motion was held by the Court as excusable neglect under the circumstances.

This Court is once again presented with motions by both parties for Summary Judgment: Plaintiff's Motion for Summary Judgment, Defendant's opposition thereto, and Defendant's Cross-Motion for Summary Judgment. Giving rise to these motions are a series of lease transactions flowing from a lease entered into on February 20, 1969. It is Plaintiff's position that the Prime Lease and the subsequent subleases and assignments thereunder require VIPA as Lessee to make certain repairs to the lease premises occupied by Plaintiff. Plaintiff concludes that an examination of these lease agreements show there is no genuine issue of material fact and it is therefore entitled to judgment as a matter of law. Defendant also argues that it too is entitled to summary judgment as a matter of law since there is no lease agreement between Aviation and VIPA from which Aviation derives the right to demand that VIPA make repairs to the lease premises or reimburse Aviation for the cost of the such repairs.

The following chronology of the various lease agreements, foreclosures, and assignments briefly summarizes the relationship of the parties herein.

| Date | Event |
|---|---|
| (1) Feb. 20, 1969 | Prime Lease entered into between VIAIRA as Lessor and VIAC as Lessee for "that parcel of land at the facility designated as parcel No. 33, Alexander Hamilton Airport, St. Croix, V.I. consisting of 4.20 acres."<br><br>VIAC mortgaged its lease-hold interest to First Penn. |

*Lessor*: VIAIRA
*Lessee*: VIAC
*Mortgagee of leasehold*: First Penn
*Mortgagor of leasehold*: VIAC

29

<span style="display:block; background:black; height:1.5em; width:70%;"></span>

(2) Sept. 14, 1976 First Penn foreclosed against VIAC. See First Pennsylvania, N.A. v. VIAC, (D.C. V.I.—St. Croix, Div., No. 25/994).

(3) Dec. 3, 1976 First Penn purchases VIAC's leasehold interest.

*Lessor*: VIAIRA
*Lessee*: First Penn

(4) May 5, 1977 First Penn assigns leasehold interest acquired on Dec. 3, 1976 to ROBERT T. STAVELY and HOWARD J. TAYLOR.

Assignees mortgaged their leasehold interest to First Penn.

*Lessor*: VIAIRA
*Lessees*: ROBERT T. STAVELY and HOWARD J. TAYLOR
*Mortgagee of Leasehold*: First Penn
*Mortgagor of Leasehold*: ROBERT T. STAVELY and HOWARD J. TAYLOR

(5) June 1, 1978 ROBERT T. STAVELY and HOWARD J. TAYLOR subleased a portion of their leased premises to JOHN and CAROLINE STUART-JERVIS.

The premises subleased were the hanger, landing pad, approach ways, gas tanks and parking pad adjacent to the hotel facility known as The Inn.

*Lessor*: VIAIRA
*Lessees*: ROBERT T. STAVELY and HOWARD J. TAYLOR
*Mortgagee of Leasehold*: First Penn
*Mortgagor of Leasehold*: ROBERT T. STAVELY and HOWARD J. TAYLOR
*Sublessor*: ROBERT T. STAVELY and HOWARD J. TAYLOR
*Sublessee*: JOHN and CAROLINE STUART-JERVIS

(6) July 10, 1981 JOHN and CAROLINE STUART-JERVIS sub-leased a portion of their leasehold interest to AVIA-

TION ASSOCIATES INC. (Plaintiff herein).

*Lessor*: VIAIRA

*Lessee*: ROBERT T. STAVELY and HOWARD J. TAYLOR

*Mortgagee of Leasehold*: First Penn

*Mortgagor of Leasehold*: ROBERT T. STAVELY and HOWARD J. TAYLOR

*Sublessor*: ROBERT T. STAVELY and HOWARD J. TAYLOR

*Sublessee*: JOHN and CAROLINE STUART–JERVIS

*Sub-Sublessee*: AVIATION ASSOCIATES, INC.

(7) Sept. 5, 1984

First Penn foreclosed on their leasehold mortgage with ROBERT T. STAVELY and HOWARD J. TAYLOR.

See First Pennsylvania Bank, N.A. v. STAVELY, (D.C. V.I.-St. Croix Div., No. 296/1981).

(8) July 26, 1985

First Penn purchases leasehold interest of ROBERT T. STAVELY and HOWARD J. TAYLOR in U.S. Marshall sale.

*Lessor*: VIRGIN ISLANDS PORT AUTHORITY (VIPA), successor to VIAIRA.

*Lessee*: First Penn

*Sublessor*: First Penn

*Sublessee*: JOHN and CAROLINE STUART–JERVIS

*Sub-Sublessee*: AVIATION ASSOCIATES, INC.

(9) May 20, 1986

First Penn assigns all its interest as Lessee in the Feb. 20, 1969 leased premises, acquired by virtue of a mortgage foreclosure and Marshall conveyance of July 26, 1985 to VIPA.

*Lessor*: VIPA

*Lessee*: VIPA

*Sublessor*: VIPA

*Sublessee*: JOHN and CAROLINE STUART–JERVIS

*Sub-Sublessee*: AVIATION ASSOCIATES, INC.

Out of the foregoing web of lease agreements, mortgage foreclosures and assignments Aviation finds a responsibility on the part of VIPA to make certain repairs to the leased premises occupied by Aviation. In essence, a sub-sublessee is demanding that the Lessor who is also the Lessee make structural repairs or reimburse the sub-sublessee for the same.

## SUMMARY JUDGMENT STANDARD

 Under 56(c) of the Federal Rules of Civil Procedure summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages." The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

 The standard for summary judgment mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a). Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S. Ct. 2505, 2511 (1986). This standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. Id. at 247–248, 106 S. Ct. at 2510 (emphasis in original). The Liberty Lobby Court held that the clear-and-convincing standard of proof should be taken into account by trial judges when ruling on summary judgment motions. Id. at 255, 106 S. Ct. at 2513. Furthermore, the judge must view the evidence presented through the prism of the substantive evidentiary burden; whether a jury could reasonably find *either* that the plaintiff proved his case by the quality and quantity of evidence required by the governing law or that he did not. Id. (emphasis in original).

 This standard of proof articulated by the Court "does not denigrate the role of the jury [and] it by no means authorizes trial on

affidavits. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor," Id. at 255, 106 S. Ct. at 2513. Keeping within the guidelines set forth in Anderson v. Liberty Lobby, Inc., a discussion of the issues in the instant case will therefore involve the application of the clear-and-convincing standard of proof.

## DISCUSSION

Defendant invokes the doctrine of merger, common law principles of landlord and tenant obligations, and assignment of contract theories. For the following reasons, the Court is of the opinion that the legal principles applicable to the issues presented are derived from the law of contracts and assignments.

■ Firstly, with respect to the merger of estates, the doctrine of merger is not favored either at law or in equity and will not be applied in the absence of an intent on the part of the person acquiring both estates to effect a merger and extinguish existing obligation, or unless application of the doctrine is required by the equities of a particular case. See Kelly v. Weir, 243 F. Supp. 588, 598 (E.D. Ark. 1965); accord National Surety Corporation v. Inland Properties, Inc., 286 F. Supp. 173, 187 (E.D. Ark. 1968), see also Harris v. Alaska Title Guaranty Company, 510 P. 2d 501, 503–504 (Alaska 1973) (the question of merger inevitably involves the issue of intent and the doctrine of merger is frequently applied to mortgages); Factors' Traders Ins. Co. v. Murphy, 111 U.S. 738, 4 S. Ct. 679, 681–682 (1884) (where an incumbrancer, by mortgage or otherwise, becomes the owner of the legal title or of the equity of redemption, the merger will not be held to take place if it be apparent that it was not the intention of the owner, or if in the absence of any intention said merger was against his manifest interest).

■ Secondly, the First Penn Reassignment and Lease Surrender abrogated common law landlord and tenant rules of privity of estate and contract after there has been an assignment. See Shadeland Development Corp. v. Meek, 489 N.E. 2d 1192, 1196 (Ind. App. 1986) (citing 1165 Fifth Avenue Corp. v. Alger, 41 N.E. 2d 461 (N.Y. 1942).

Applying the law of assignments, the Court must determine whether VIPA accepted the obligations of Lessee under the Prime

33

Lease when First Penn executed the Reassignment and Lease Surrender of May 20, 1986. If VIPA accepted the Lessee's obligations under the Prime Lease, are the repairs in question of the type described in the Lease?

## I.

VIPA does not dispute that First Penn's Reassignment and Lease Surrender agreement of May 20, 1986 was a release of First Penn's rights and obligations as Lessee. There is also no issue as to whether VIPA accepted the assignment. Thus, there being a valid assignment releasing the assignor of all its rights and obligations, and there being acceptance of the assignment by the assignee, the analysis begins with the general principles of assignment.

■ An assignment is a transfer of rights and the extent of the obligations which are accepted by the assignee of the lease is a matter of contract. Barker Development Co. v. Unibank, Etc., 314 N.W. 2d 175, 178 (Iowa App. 1981). As so viewed, the extent of the obligations accepted depends entirely upon the terms of the agreement in the particular case, Id.; accord Kintner v. Harr, 408 P. 2d 487, 496 (Mont. 1965); Cedar Point Apartments v. Cedar Point Inv. Corp., 693 F. 2d 748, 755 (8th Cir. 1982).

■ The language of the Reassignment and Lease Surrender is as follows:

ASSIGNMENT made by FIRST PENNSYLVANIA BANK, N.A. of P.O. Box 460, Christiansted, St. Croix, U.S. Virgin Islands (ASSIGNOR) to VIRGIN ISLANDS PORT AUTHORITY of P.O. Box 1707, Charlotte Amalie, St. Thomas (ASSIGNEE). In consideration of the payment of TEN DOLLARS and other valuable consideration paid by the ASSIGNEE to the ASSIGNOR, receipt of which is hereby acknowledged, the ASSIGNOR hereby assigns and surrender all of its rights as LESSEE under Lease Agreement dated February 20, 1969 between Government of the Virgin Islands Airport and Industrial Resources Agency, predecessor of Virgin Islands Port Authority, Lessor, which ASSIGNOR acquired by virtue of a mortgage foreclosure against Estate Manning Bay Development Corp. by virtue of a Marshal's Conveyance of Leasehold dated July 26, 1985 and thereafter placed on record with the Recorder of Deeds, St. Croix, U.S. Virgin Islands at Vol. PC 353M, page 331, filing No. 4411/1985 covering premises described as:

34

Parcel No. 33 of Estate Manning Bay, Prince Quarter, Alexander Hamilton Airport, St. Croix, U.S. Virgin Islands as shown on P.W.D. No. 2443 dated July 15, 1968, revised December 14, 1968, consisting of 4.20 U.S. acres.

TO HAVE AND TO HOLD the same unto the ASSIGNEE, and to the Successor Assigns of the Assignee forever.

This ASSIGNMENT shall serve as a surrender of ASSIGNOR's rights as LESSEE under LEASE as above described and is made expressly subject to existing SUB–LEASE AGREEMENT of June 1, 1978 from Robert Stavely and Howard Taylor, Jr. to John Stuart-Jervis and Carolyn Stuart-Jervis, as amended March 28, 1980 and as modified by stipulation of the parties dated June 20, 1983 in Bankruptcy Proceeding under Chapter 11 Nos. B-183-2 and 3 entitled "In re Howard Taylor, Jr. and Estate Manning Bay Development Corp.," under which lease there is held a security deposit, and SUBJECT ALSO to an assignment of car rental rights to BUDGET RENT A CAR.

This ASSIGNMENT is made and accepted without any representation, promise, or warranty, either express or implied, and the ASSIGNEE and the Successors and Assigns of the ASSIGNEE hereby discharge the ASSIGNOR and the Successor of the Assignor from any liability under or in connection with this ASSIGNMENT.

Whether VIPA assumed the obligations of Lessee under the Prime lease is controlled by the Restatement (Second) of Contracts § 328:

(1) Unless the language or the circumstances indicated to the contrary as in an assignment of "the contract" or of "all my rights under the contract" or an assignment in similar general terms is an assignment of the assignor's rights and a delegation of his unperformed duties under the contract.

(2) Unless the language or the circumstances indicate to the contrary, the acceptance by an assignee of such an assignment operates as a promise to the assignor to perform the assignor's unperformed duties, and the obligor of the assigned rights is an intended beneficiary of the promise.

Acceptance of the lease assignment subject to the Sublease Agreement of June 1, 1978 estops VIPA as assignee to deny its obligations as lessee under the Prime Lease and the subsequent subleases thereunder. Accord Susse Chalet Inn, Etc. v. Howard Johnson Co., 421 N.E. 2d 774, 776 (Mass. App. Ct. 1981). VIPA's argument that accept-

ance of the First Penn Reassignment and lease Surrender subject to the June 1, 1978 Sublease Agreement was not an assumption of the duties as Lessee is without merit. First of all, while relying on the Restatement (Second) of Contracts § 328, VIPA has not referred the Court to any language, contrary circumstances nor applicable case law in support of its novel argument that acceptance of the lease assignment may be limited to the right to occupy the premises at a specified rent but not to obligate VIPA to subleases of John and Caroline Stuart-Jervis. The clear and unambiguous language of the Reassignment and Lease Surrender agreement coupled with VIPA's acceptance require a rejection of VIPA's argument that as Lessor it did not assume the obligations of Lessee under the Prime Lease.

It must be underscored that the language of the assignment is clear as to the assignee's recognition of the June 1, 1978 Sublease Agreement. It appears that VIPA is attempting to alter the terms of the assignment. However, having accepted the assignment on May 20, 1986 as written, VIPA cannot now alter its obligations when Aviation make its demands.

## II.

Because the Court finds that VIPA has all the obligations as Lessee under the Prime Lease and the Sublease of June 1, 1978 it must now look at the language of the leases to determine the type of repairs Lessee contracted to. In construing a Lease, the intention of the parties must be ascertained from the language employed in the lease. Harbor Marine Corp. v. Briehler, 459 A. 2d 489, 491 (R.I. 1983) (citing Humble Oil and Refining Co. v. Lennon, 94 R.I. 509, 514, 182 A. 2d 306, 309 (1962). Furthermore, where a lessee covenants to make repairs which are limited in nature or extent, the covenant will be construed to extend only to repairs of the kind stipulated. Id. Accord Baxter v. Ill. Police Federation, 380 N.E. 2d 832 (Ill. App. Ct. 1978); Chis/Rob Rlty. v. Chrysler Rlty. Corp., 260 N.W. 456 (Minn. 1978); Hardy v. Montgomery Ward & Co., 267 N.E. 2d 748 (Ill. App. Ct. 1971); Koenigshofer v. Shumate, 216 N.E. 2d 195 (Ill. App. Ct. 1966).

Under Section 9(I) of the Prime Lease provision which addresses the method of operation, "Lessee shall, subject to and in accordance with the provisions of this lease relating to construction by the Lessee, make any and all reasonable structural and non-structural improvements, alterations or repairs of the premises that may be

36

required at any time hereafter by any such present or future rule, regulation, requirements, order or direction."[8] Section 12, Maintenance and Repair, provides:

A. The Lessee shall at all times keep the premises clean, and in good order and repair, subject to the provisions of Section 26 [Surrender].

B. The Lessee shall repair, replace, rebuild and paint all or any part of the premises which may be damaged or destroyed by the acts or omission of the Lessee, its officers, employees or other persons on or at the premises with the consent of the Lessee.

C. With respect to all parts of the premises, or parts thereof demised to the lessee, including, but without limitation, such of the following as are or may be during the term of this lease located in or on the premises: fences, the exterior and interior of the building walls, the exterior and interior and of operating mechanisms of and attachments to windows and skylight screens, roofs, foundations, steel works, columns, the exterior and interior operating mechanisms of an attachment doors, partitions, floors, ceilings, inside and outside paved and unpaved areas, glass of every kind, and the utility, mechanical, electrical and other systems, the Lessee shall take the same good care of the premises that would be taken by a reasonably prudent owner who desired to keep and maintain the same so that at the expiration or termination of this lease and at all times during the term thereof, the same (or a reconstruction of all or any part thereof) will be in as good condition as at the commencement thereof (or, in the case of improvements made during this lease, in as good condition as at the time of the installation or construction thereof), except for reasonable wear which does not adversely affect the watertight condition or structural integrity of the building or other structures on the premises or adversely affect the efficient or the proper utilization of any part of the premises. To that end, the Lessee shall make frequent periodic inspection and from time to time as the necessity therefor arises and regardless of the cause of the condition requiring the same, the Lessee shall perform all necessary preventive maintenance including but not limited to painting (exterior of the building,

---

[8] Id. at Page 16.

areas of joint or common use and areas visible to the general public to be painted in colors which have been approved by the Agency), and except under circumstances as set forth in subsection (A) or Section 14 of this lease, the Lessee shall make all necessary repairs and replacements and do all necessary rebuilding with respect to all parts of the premises, all of which shall be in quality equal to the original in materials and workmanship and regardless of whether such repairs and replacements are structural, non-structural, ordinary, extraordinary or foreseen. The Lessee shall commence to perform each of its obligation hereunder within twenty days after notice from Agency and shall thereafter continue the same to completion with reasonable diligence.

D. No improvement on the premises shall be removed, demolished or structurally altered in whole or in part without the prior written consent of the Agency. Except with the prior approval of the Agency, the Lessee shall not erect any structures, make any major improvements or do any other construction work on the premises or alter, modify, or make any major additions or improvements to any structure now existing or built at any time during the term of this lease.[9]

The June 1, 1978 Sublease Agreement subleased the hangar, landing pad, approach ways, gas tanks, and parking pad adjacent to the hotel facility known as The Inn.[10] Sublessee covenanted and agreed to be bound by and perform the terms and conditions of Section 12 of the Prime Lease agreement respecting maintenance and repair of the premises except that Sublessee shall not become responsible for structural repairs of the buildings or other improvements presently in existence unless necessitated by acts of sublessee, its agent, or employees.[11] The repairs in question were paving repairs on a ramp at the hangar facility (i.e. airplane parking area). Pursuant to the Prime Lease, Lessee is required to make all necessary repairs and replacements and do all necessary rebuilding with respect to all parts of the premises, whether such repairs and replacements are structural, non-structural, ordinary, extra-ordinary or foreseen. The

---

[9] Id. at Pages 18–20.

[10] Stavely and Taylor-Jervis Sublease Agreement of June 1, 1978, Section I, Page 1–2.

[11] Id. at Section XII, Page 12.

language of the Prime Lease is certainly very clear as to the type of repairs Lessee is required to make. No doubt that "all repairs, structural and non-structural, ordinary, extraordinary or unforeseen" include the paving repairs or a ramp in the hangar facility subleased by Aviation.

In the Court hearing of October 26, 1988, the parties conceded that the ramp area paved by Aviation included areas inside and outside the leased premises at Plot 33 Estate Mannings Bay. It was also conceded, and supported by Plaintiff's Exhibits 19, 20 and 21, that of the 1,474 square yards paved, only 1,372 represented repaving of areas covered under the Prime Lease. The total fee charged for paving was $27,402.00 and $25,483.81 represents the cost of repaving the 1,372 square yards covered by the prime lease.

## CONCLUSION

Summary judgment will be entered in favor of plaintiff Aviation against defendant VIPA because the Prime Lease of February 20, 1969, subsequent Sublease Agreement of June 1, 1978 and the Reassignment and Lease Surrender dated May 20, 1986 are clear and convincing evidence that there is no material issue of fact regarding the obligations of VIPA as Lessee. The assignment was expressly made subject to the terms and conditions of the Prime Lease. The premises subleased and subsequently repaired by Aviation are among the areas specifically authorized by the Prime Lease to be repaired by Lessee. Therefore, VIPA having accepted a valid assignment from First Penn is now estopped to deny its obligations as Lessee under the assigned lease.

## AMENDED ORDER

In accordance with the Memorandum Opinion filed herein, it is

ORDERED that Plaintiff's Motion for Summary Judgment against Defendant in the amount of Twenty-Five Thousand Four Hundred and Eighty-Three Dollars and Eighty-One Cents ($25,483.81) is hereby GRANTED.